Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Adolfo Vilanova Díaz, quien comparece por sí y en representación de Superior Paints Manufacturing Company, Inc., Reliance Caribbean, Inc., Banner Paints, Inc. y Vilco Chemicals, Inc., representado a su vez por su tutora Sonia Vilanova Hernández<br><br>Demandantes-recurridos<br><br>v.<br><br>Diana Velia Vilanova Serrano, Fiduciaria del Fideicomiso Serrano Cruz, como Directora y Principal Oficial Ejecutiva de Superior Paints Manufacturing, Co., Inc. y de las restantes Entidades Corporativas que componen las Empresas Vilanova y en representación de sus hijos menores de edad Gabriel Ernesto Detres Vilanova y Diana Iris Detres Vilanova;<br><br>Iris Belia Serrano Cruz<br>Demandadas-peticionarias<br><br>Y<br><br>Francisco González Dávila, Marta Luz Báez Rosado y la Sociedad Legal de Gananciales constituida entre ambos, por sí y como Director de Superior Paints Manufacturing Co., Inc.;<br><br>ABC Insurance Company;<br><br>Fideicomiso Serrano Cruz;<br><br>DEF Insurance Company;<br><br>Paul W. Formby Fernández, su esposa Fulana Formby y la Sociedad Legal de Gananciales constituida entre ambos; Fideicomiso Vilanova Serrano;<br><br>GHI Insurance Company;<br><br>Allmerica Financial Life Insurance & Annuity Company;<br><br>Allmerica Investments, Inc.;<br><br>JKL Insurance Company; | Certiorari<br><br>2012 TSPR 53<br><br>184 DPR ____ |

| Miguel A. Rivera Rivera, su esposa Fulana Rivera y la Sociedad de Gananciales constituida entre ambos; <br><br> MNO Insurance Company <br><br> CPA Mengano de tal, su esposa mengana de tal y la Sociedad Legal de Gananciales constituida entre ambos; <br><br> Doe Accountants, Inc. <br><br> PQR Insurance Company <br><br> Terceros Sutanos <br><br> STU Insurance Companies <br> Demandados | |
|---|---|

Número del Caso: CC-2009-303
                CC-2009-591


Fecha: 21 de marzo de 2012


Tribunal de Apelaciones:

        Región Judicial de San Juan


Abogados de la Parte Peticionaria:

        Lcdo. Guillermo Ramos Luiña
        Lcdo. Eduardo Báez Galib

Abogados de la Parte Recurrida:

        Lcdo. Kermit Ortiz Morales
        Lcda. Sylvia Vilanova Hernández


Materia: Sucesiones – Reivindicación de bienes; nombramiento de administrador judicial en representación de la comunidad hereditaria; expedición de cartas testamentarias a favor de albacea


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Adolfo Vilanova Díaz, quien comparece por sí y en representación de Superior Paints Manufacturing Company, Inc., Reliance Caribbean, Inc., Banner Paints, Inc. y Vilco Chemicals, Inc., representado a su vez por su tutora Sonia Vilanova Hernández<br><br>Demandantes-recurridos<br><br>v.<br><br>Diana Velia Vilanova Serrano, Fiduciaria del Fideicomiso Serrano Cruz, como Directora y Principal Oficial Ejecutiva de Superior Paints Manufacturing, Co., Inc. y de las restantes Entidades Corporativas que componen las Empresas Vilanova y en representación de sus hijos menores de edad Gabriel Ernesto Detres Vilanova y Diana Iris Detres Vilanova;<br><br>Iris Belia Serrano Cruz<br>     Demandadas-peticionarias<br><br>Y<br><br>Francisco González Dávila, Marta Luz Báez Rosado y la Sociedad Legal de Gananciales constituida entre ambos, por sí y como Director de Superior Paints Manufacturing Co., Inc.;<br><br>ABC Insurance Company;<br><br>Fideicomiso Serrano Cruz;<br><br>DEF Insurance Company;<br><br>Paul W. Formby Fernández, su esposa Fulana Formby y la Sociedad Legal de Gananciales constituida entre ambos; Fideicomiso Vilanova Serrano; | CC-2009-303<br>CC-2009-591 |

GHI Insurance Company;

Allmerica      Financial      Life
Insurance & Annuity Company;

Allmerica Investments, Inc.;

JKL Insurance Company;

Miguel A. Rivera Rivera, su
esposa Fulana Rivera y la
Sociedad    de    Gananciales
constituida entre ambos;

MNO Insurance Company

CPA Mengano de tal, su esposa
mengana de tal y la Sociedad
Legal       de       Gananciales
constituida entre ambos;

Doe Accountants, Inc.

PQR Insurance Company

Terceros Sutanos

STU Insurance Companies
Demandados

Opinión del Tribunal emitida por el Juez Asociado señor
MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 21 de marzo de 2012.

En esta ocasión este Tribunal tiene dos controversias
que resolver. La primera es establecer quién sustituye a un
causante en un pleito de reivindicación de bienes que éste,
por conducto de su tutor, instara en vida en contra de dos
de sus herederas. En específico, debemos resolver si
procede el nombramiento de un administrador judicial para
que represente a la comunidad hereditaria en ese pleito y

para que administre la sucesión. La segunda es auscultar cuál es el trámite procesal adecuado en un pleito de expedición de cartas testamentarias a favor de una albacea, cuando existe oposición a que las cartas se expidan.

I

Don Juan A. Vilanova Díaz procreó en su primer matrimonio con la Sra. Gloria Hernández cinco hijos: Sonia Maritza, Ricardo Adolfo, Ivonne Catherine, Diana Gloria y Sylvia Margarita, todos de apellidos Vilanova Hernández. En un matrimonio posterior con la Sra. Iris B. Serrano Cruz procreó otra hija llamada Diana V. Vilanova Serrano. Asimismo, en una relación extramarital con la Sra. Annie Román Crespo procreó una última hija llamada Annie Vilanova Román.

El causante otorgó testamento abierto el 23 de junio de 1994 ante el notario Eduardo R. Guzmán Valiente. Instituyó como herederos a sus siete hijos y a su esposa Iris B. Serrano Cruz. Designó como albacea y contadora partidora a su hija Diana V. Vilanova Serrano. Como albacea sustituta nombró a su esposa Iris B. Serrano Cruz. En la eventualidad de que ambas resultaran incapaces de desempeñar el cargo, el testador nombró albacea al Banco Santander Puerto Rico.

Años más tarde, el 12 de diciembre de 2002, el causante fue declarado incapaz por el Tribunal de Primera Instancia, Sala de Bayamón. Luego de ciertos trámites, el tribunal designó como tutora del señor Vilanova Díaz a su hija Sonia Margarita Vilanova Hernández.

Del análisis de una investigación realizada surgió, según se alega, que la esposa del señor Vilanova Díaz, la señora Serrano Cruz y la hija de ambos, la señora Vilanova Serrano, en unión con otras personas se dedicaron durante años a utilizar, disponer, dilapidar y apropiarse indebida y sistemáticamente de los bienes personales y privativos del señor Vilanova Díaz, mediante maquinaciones insidiosas, mecanismos legales nulos o de dudosa legalidad y transacciones financieras fraudulentas, todo lo cual ocasionó cuantiosas pérdidas económicas.

Por tal razón, el 26 de enero de 2006 la Sra. Sonia Margarita Vilanova Hernández, en su capacidad de tutora del señor Vilanova Díaz, presentó una demanda contra la esposa de éste, la señora Serrano Cruz, la señora Vilanova Serrano, Allmerica Financial Life Insurance & Annuity Company (Allmerica) y Miguel A. Rivera Rivera, entre otros. Se le imputó a la señora Serrano Cruz y a la señora Vilanova Serrano disponer, dilapidar y apropiarse indebida y sistemáticamente de los bienes del señor Vilanova Díaz.

En esa demanda se incluyeron como demandantes a las corporaciones Superior Paints Manufacturing Company, Inc., Reliance Caribbean, Inc., Banner Paints, Inc., y Vilco Chemicals, Inc., de las cuales el señor Vilanova Díaz era accionista.

El 23 de noviembre de 2007, durante el transcurso del pleito, el señor Vilanova Díaz falleció. Pocos días después, la hasta entonces tutora Sonia Vilanova Hernández, presentó una "Moción informando fallecimiento y solicitud

de orden". El 3 de diciembre de 2007 y a solicitud de la señora Vilanova Serrano, el Tribunal de Primera Instancia emitió una resolución en la que ordenó la paralización de los procedimientos. Ordenó, además, que se procediera con la sustitución de parte.

El 11 de diciembre de 2007 Allmerica consignó en el tribunal $8,336,515.74 en pago de los beneficios por muerte por la póliza de seguro de vida y la anualidad del señor Vilanova Díaz. El Tribunal de Primera Instancia aceptó la consignación. Luego de la presentación de varias mociones de sustitución de parte, y de otros escritos presentados por ambas partes, el 6 de febrero de 2008 el Tribunal de Primera Instancia dictó una orden en la que declaró con lugar la moción. Mediante esta autorizó la sustitución del causante por los hermanos Vilanova Hernández y Vilanova Román. Además, dispuso que se presentase una demanda enmendada en treinta días.

El 8 de febrero de 2008, la señora Vilanova Serrano presentó una moción en la que hizo constar su oposición a la sustitución solicitada por los hermanos Vilanova-Hernández y Vilanova-Román. Argumentó que la sustitución le correspondía a ella como albacea testamentaria, de conformidad con el Art. 584 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2471.

El 21 de febrero de 2008 Allmerica, la señora Serrano Cruz, la señora Vilanova Hernández y el codemandado Miguel A. Rivera Rivera presentaron una moción conjunta en la que solicitaron la reconsideración de la orden que había

permitido la sustitución. Expusieron como fundamento que la sustitución del señor Vilanova Díaz por solo algunos de los herederos, con exclusión de otros, es improcedente como cuestión de derecho, toda vez que no se ha dado la liquidación y partición del caudal relicto y ninguno de los herederos es dueño de una cosa o bien determinado del caudal. De igual manera, adujeron que la sustitución del señor Vilanova Díaz por únicamente algunos de los herederos es improcedente ya que, como cuestión de derecho y de conformidad con el testamento, la representación del causante corresponde a la albacea testamentaria. Por último, indicaron que existe una disputa con otros miembros de la sucesión del señor Vilanova Díaz que son demandados en este caso, que tiene que ventilarse en las acciones reconocidas por ley para ese propósito, y que no podía adjudicarse en ese caso.

El 21 de febrero de 2008 el Tribunal de Primera Instancia emitió una resolución sobre la mencionada moción en la que señaló lo siguiente:

> [E]n principio, no tenemos reparo a la sustitución solicitada para incluir todos los nombres de los miembros de la sucesión, pero antes debe someterse al tribunal copia de la Resolución sobre expedición de Cartas Testamentarias. [...] [C]laramente, en este caso, los intereses de los herederos (incluyendo a la Albacea) están encontrados y en conflicto.

El 25 de febrero de 2008 el Tribunal de Primera Instancia emitió una orden mediante la cual declaró con lugar la moción conjunta que solicitó la reconsideración de la orden de 16 de febrero de 2008, y la dejó sin efecto.

Del expediente surge que el 29 de marzo de 2008 la señora Vilanova Serrano presentó ante el Tribunal de Primera Instancia, en el caso civil número KJV2008-0528, una petición *ex parte* para que se expidieran cartas testamentarias a su favor. Los hermanos Vilanova-Hernández y Vilanova-Román presentaron una solicitud de intervención en la que informaron que cuestionarían judicialmente el testamento otorgado por el señor Vilanova Díaz y, además, solicitarían la descalificación de la señora Vilanova Serrano como albacea y de la señora Serrano Cruz como albacea sustituta y como contadoras partidoras del caudal relicto.[1] Además, solicitaron de forma defectuosa el nombramiento de un administrador judicial.

El foro primario emitió resolución el 3 de abril de 2008 en el caso de expedición de cartas testamentarias y decretó el archivo del caso sin perjuicio. De esta resolución solo acudió en apelación ante el Tribunal de Apelaciones la señora Vilanova Serrano. Los hermanos Vilanova Hernández y Vilanova Román no recurrieron de la denegatoria en torno a la administración judicial. El 24 de abril de 2009 el Tribunal de Apelaciones emitió sentencia

---

[1] En el caso Núm. K AC2008-372, los hermanos Vilanova Hernández y Vilanova Román impugnaron el testamento abierto que otorgó su padre. En esencia, adujeron que este último no tenía capacidad para testar. El 29 de julio de 2011 el foro primario dictó sentencia parcial mediante la cual resolvió que el señor Vilanova Díaz estaba capacitado para testar y en consecuencia, desestimó la acción sobre impugnación de testamento. Actualmente, el pleito se encuentra ante la consideración del Tribunal de Apelaciones en el recurso KLAN2011-1211.

mediante la cual revocó el dictamen del Tribunal de Primera Instancia y devolvió el caso a ese foro para que atendiera y dispusiera de manera final la petición sobre cartas testamentarias.

De esa determinación acuden ante este Tribunal los hermanos Vilanova-Hernández y Vilanova-Román. Plantean que el Tribunal de Apelaciones erró al ordenarle al Tribunal de Primera Instancia expedir cartas testamentarias a favor de la señora Vilanova Serrano.

Por otro lado, en el pleito de reivindicación de bienes, luego de varios incidentes procesales, el Tribunal de Primera Instancia dictó una resolución el 3 de abril de 2008 en la que ordenó que se sustituyera al causante por la albacea y todos los otros miembros de la sucesión. Fundamentó su decisión en el Art. 584 del Código de Enjuiciamientos Civil de Puerto Rico, 32 L.P.R.A. sec. 2471, y en lo pautado por este Tribunal en Franceschi v. Corte, 45 D.P.R 666 (1933) y en Descartes v. Tribl. Contribuciones y Cerra, Int., 74 D.P.R. 567 (1953). Además, señaló que las señoras Vilanova Serrano y Serrano Cruz permanecían en el pleito como partes demandadas en su carácter individual y no como herederas del causante Juan A. Vilanova Díaz.

Inconformes con lo resuelto, todas las partes acudieron al Tribunal de Apelaciones mediante recursos de *certiorari* separados. Los hermanos Vilanova-Hernández sostuvieron que el Tribunal de Primera Instancia erró al determinar que el causante debía ser sustituido por la

albacea testamentaria, la señora Vilanova Serrano, conjuntamente con los restantes herederos, incluyendo a la viuda codemandada, la señora Serrano Cruz. Plantearon, además, que era erróneo determinar que la demanda no era enmendable. En ningún momento los hermanos Vilanova Hernández adujeron que era necesario nombrar un administrador judicial.

Por su parte, la señora Vilanova Serrano y la señora Serrano Cruz alegaron, en síntesis, que el Tribunal de Primera Instancia erró al determinar que ambas debían permanecer como demandadas y a la misma vez fuesen incluidas como codemandantes por ser herederas forzosas. Sostuvieron que tal sustitución es improcedente en derecho e inmanejable procesalmente y, que además, viola su derecho constitucional a un debido proceso de ley.

El Tribunal de Apelaciones consolidó los recursos y, el 10 de octubre de 2008 emitió la sentencia que es objeto de este recurso. Dispuso, en síntesis, lo siguiente:

> Ante este cuadro fáctico y procesal, nos parece que cobra vigencia lo dispuesto en el Artículo 564 del Código de Enjuiciamiento Civil, *supra*, que permite, a nuestro juicio, que el tribunal designe un extraño de conocida honradez y capacidad para que sustituya, represente y defienda los intereses del finado Vilanova Díaz y de las corporaciones codemandantes en este pleito.

En cuanto a la parte del dictamen en que el Tribunal de Primera Instancia cerró las puertas a permitir enmiendas a las alegaciones, el Tribunal de Apelaciones entendió que en esa etapa del trámite del caso ello constituía una acción irrazonable. El foro apelativo intermedio añadió que

una vez se designe un administrador judicial que sustituya y represente al señor Vilanova Díaz como demandante en este pleito, debe concedérsele oportunidad para decidir si propone o no enmiendas a las alegaciones de la demanda. Sobre ese extremo de la sentencia las peticionarias no solicitaron revisión.

Mediante recurso de *certiorari* presentado ante este Tribunal, las señoras Vilanova Serrano y Serrano Cruz plantean que el foro apelativo intermedio erró al no aplicar el Art. 584 del Código de Enjuiciamiento Civil de Puerto Rico, supra. Señalaron, además, que es erróneo sugerir que, una vez el caso regrese ante el Tribunal de Primera Instancia, se nombre a un "extraño" para que se desempeñe como administrador judicial y represente al finado en este caso, lo cual equivale a una remoción *de facto* de la albacea testamentaria y a una adjudicación judicial a base de meras alegaciones y teorías, sin vista alguna y en clara violación a los más elementales principios del derecho constitucional a un debido proceso de ley. Los hermanos Vilanova Hernández y Vilanova Román solicitaron la consolidación de los dos recursos ante este Tribunal, a lo que accedimos el 15 de enero de 2010.

II

A

Nuestro ordenamiento procesal regula lo relativo a la sustitución de parte por razón de muerte en la Regla 22.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V. En específico, dicha regla establece que cuando una parte

fallece y la reclamación no queda extinguida por ello, cualquiera de las partes en el procedimiento o sus abogados notificarán el fallecimiento al tribunal y a las otras partes dentro del término de treinta días. Luego, el tribunal, a solicitud hecha dentro de los noventa días siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las <u>partes apropiadas</u>.

Como se aprecia, la Regla 22.1 hace alusión a la parte <u>apropiada</u>, pues es el derecho sustantivo de cada caso el que indica quién es la parte idónea que debe sustituir al causante. Al interpretar la Regla 22.1 de Procedimiento Civil de 1979, fundamentalmente idéntica a la de 2009 en lo que nos concierne, mencionamos que aquella "atiende el interés público de que los asuntos en los tribunales se solucionen de forma expedita para evitar el perjuicio que la dilación pueda causar a las partes". <u>Echevarría Jiménez v. Sucn. Pérez Meri</u>, 123 D.P.R. 664, 666 (1989).

De igual forma, se ha mencionado varias veces que "[e]l trámite procesal de sustitución en nada afecta los derechos sustantivos de las partes". <u>Pereira v. I.B.E.C.</u>, 95 D.P.R. 28, 66 (1967). Véase, además, <u>Lluch v. España Service Sta.</u>, 117 D.P.R. 729 (1986). Esto implica que la parte que sustituye se coloca en los mismos zapatos que la parte sustituida. Conviene señalar que ningún inciso de la Regla 22, <u>supra</u>, ni su jurisprudencia interpretativa, sugieren que se puede sustituir al causante por un administrador judicial cuando ninguna parte lo ha solicitado.

Recientemente mencionamos en <u>García Colón et al. v. Sucn. González</u>, 178 D.P.R. 527, 548 (2010), que una parte indispensable es aquella "de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos". Véase, Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V. Así pues, los intereses de esa parte "podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio". <u>Fuentes v. Tribl. de Distrito</u>, 73 D.P.R. 959, 981 (1952). Por eso, el interés al que hace referencia la Regla 16.1 de Procedimiento Civil, <u>supra</u>, "no es cualquier interés en el pleito, sino que tiene que ser de tal orden que impida producir un decreto sin afectarlo". <u>Romero v. S.L.G. Reyes</u>, 164 D.P.R. 721, 733 (2005).

Conviene recordar que es posible que

una sucesión sea parte demandante o demandada, pero para ello es necesario que se particularice e individualice expresando los miembros que la componen. No es una entidad legal independiente de los herederos. Éstos son los que la determinan y son los que deben aparecer como demandantes o demandados.

<u>Arvelo et al. v. Banco Ter. Y Ag. de P.R.</u>, 25 D.P.R. 728, 736 (1917), reiterado en <u>Pino Development Corp. v. Registrador</u>, 133 D.P.R. 373, 388 (1993).

Véanse, además, <u>Kogan v. Registrador</u>, 125 D.P.R. 636, 656 (1990); <u>Vega v. García</u>, 61 D.P.R. 99 (1942). E. González Tejera, <u>Derecho de Sucesiones: Tomo I, La sucesión</u>

intestada, San Juan, Editorial U.P.R., 2001, Tomo 1, págs. 44-45.

En otras palabras, desde principios del siglo pasado hemos dejado palmariamente claro que la sucesión como tal no tiene personalidad jurídica independiente de los miembros que la componen. Así, para que la sucesión pueda demandar, o pueda sustituir a un demandante fallecido, es necesario que cada uno de sus miembros sea traído al pleito. En este caso el foro primario ordenó que toda la sucesión fuese demandante, incluyendo las herederas demandadas. Fundamentó su posición en el Art. 584 del Código de Enjuiciamiento Civil de Puerto Rico, supra y en lo resuelto en Franceschi v. Corte, supra y en Descartes v. Tribl. Contribuciones y Cerra, Int., supra. Analicemos estos preceptos.

El Art. 584 del Código de Enjuiciamiento Civil, supra, establece que

> [s]erá deber de los administradores y, mientras éstos se nombren, de los albaceas representar al finado en todos los procedimientos comenzados por o contra el mismo antes de su muerte y los que se promovieran después por o contra el caudal de la herencia. Las acciones o procedimientos instruidos por o contra el finado se suspenderán a su muerte ínterin se haga cargo el albacea o se nombre un administrador y el albacea o administrador quedará subrogado como parte en la acción.

Resulta preciso puntualizar que el Art. 584 del Código de Enjuiciamiento Civil procede en parte del Art. 1008 de la Ley de Enjuiciamiento Civil española de 1881. En particular, el Art. 1008 de la ley española dispone:

El administrador de los bienes representará al *abintestato* en todos los pleitos que se promuevan o que estuvieren principiados al prevenirse este juicio, así como en todas las incidencias del mismo que se relacionen con el caudal, excepto en lo relativo a la declaración de herederos, en cuyas actuaciones no tendrá intervención.

También ejercitará en dicha representación las acciones que pudieran corresponder al difunto, aunque deban deducirse en otro Juzgado o Tribunal, o en la vía administrativa; y asimismo la tendrá en los demás actos en que sea necesaria la intervención del *abintestato*, hasta que se haga la declaración de herederos por sentencia firme.

J.M. Manresa y Navarro, <u>Comentarios a la Ley de Enjuiciamiento Civil Reformada</u>, 3 ed., Madrid, Imprenta de la Revista de Legislación, 1910, pág. 356.

Como se aprecia, este inciso español regulaba la administración de los bienes en las sucesiones intestadas y no en las testadas, como la que nos ocupa. Sin embargo, la Ley de 9 de marzo de 1905, mejor conocida como la Ley de Procedimientos Legales Especiales, 32 L.P.R.A. sec. 2241 y *ss*; reconstruyó el Art. 1008 de la ley española. Así, se eliminó la referencia a la sucesión intestada y se incluyó también al albacea como encargado de representar al causante en los pleitos que tuviera pendiente al momento de su muerte. Lamentablemente, la legislación de 1905 no cuenta con un historial legislativo que nos ayude a entender la razón del legislador puertorriqueño para modificar la legislación española. No obstante, este Foro ha tenido la oportunidad de interpretar esa sección.

En <u>Franceschi v. Corte</u>, <u>supra</u>, pág. 675, al analizar nuestro Art. 584 del Código de Enjuiciamiento Civil,

mencionamos que no era idéntico al Art. 1008 de la Ley de Enjuiciamiento Civil de España que limita la administración al abintestato. Por ende, concluimos que dicho artículo es "aplicable, lo mismo al abintestato que al juicio de testamentaría". Íd. A renglón seguido mencionamos que

> el administrador judicial representará al finado en todos los pleitos que se promuevan en pro o en contra de la herencia, ínterin recaiga la declaración de herederos, los cuales tendrán desde entonces dicha representación, y aclaramos y ampliamos el alcance de nuestra decisión, haciendo constar que los herederos no adquieren una representación exclusiva y que el administrador judicial, en virtud de la representación que expresamente le confiere la ley, y los herederos como partes realmente interesadas, deben actuar conjuntamente en todos los litigios que se promuevan en favor o en contra del caudal hereditario.
>
> Íd.

Claro está, en Franceschi v. Corte, íd, el pleito no era contra el albacea o el administrador judicial. En ese caso la controversia giraba en torno a si procedía la finalización de la administración judicial y la consecuente liquidación del caudal hereditario. Posteriormente, este Tribunal tuvo la oportunidad de analizar el Art. 584, supra, en Descartes v. Tribl. Contribuciones y Cerra, Int., supra. En ese caso, el administrador de una sucesión demandó al entonces Tesorero de Puerto Rico por ciertas actuaciones de este respecto el caudal. Así las cosas, el Tesorero argumentó que como no habían demandado los herederos y solo lo había hecho el albacea, faltaba una parte indispensable y procedía el archivo del caso. Sin embargo, aunque reconocimos el precedente fundado en

Franceschi v. Corte, supra, establecimos que este no era aplicable porque no se demostró que para la fecha de la presentación de la demanda existiera un testamento válido o en su defecto, una declaratoria de herederos. Por ende, no desestimamos el pleito por razón de falta de parte indispensable.

De igual forma, conviene puntualizar lo que expresamos en Paine v. Srio. de Hacienda, 85 D.P.R. 817 (1962). Allí, al analizar si la cláusula constitucional de privilegios e inmunidades prohibía que se le cobrara a un caudal hereditario una tasa de contribución mayor a la que se le cobraba a un residente, mencionamos que

> [n]ada se encontrará en nuestro ordenamiento jurídico que nos permita considerar al albaceazgo como una entidad jurídica distinta a los herederos que representan. El albaceazgo no es otra cosa que una administración acompañada de un derecho de representación para cumplir ciertas funciones específicas relacionadas con la conservación del caudal hereditario hasta el momento en que la herencia sea adida por los herederos, y como tal, tampoco podemos considerar a los albaceas como que forman una persona jurídica distinta a los herederos.

Íd., pág. 820.

Finalmente, concluimos que la sucesión y los albaceas no tenían personalidad jurídica propia, por lo que la cláusula constitucional de privilegios e inmunidades aplicaba y por consiguiente, no se le podía cobrar una tasa mayor de impuestos a los herederos. Íd.

No hay duda de que los hechos del presente caso son noveles en nuestra jurisdicción. Desafortunadamente, no contamos con algún documento que pueda arrojar luz sobre la

intención legislativa. Sin embargo, si se analizan las Opiniones emitidas por este Tribunal sobre el Artículo 584, supra, debemos concluir que como norma general es necesario sustituir al causante por los herederos **y** el albacea o administrador. Sin embargo, en ninguno de esos casos, la designada albacea era parte demandada en un pleito instado en vida por el causante. Los hechos de este caso propician la creación de una excepción a dicha norma. Así, la parte apropiada, según mencionada por la Regla 22.1, supra, que debe sustituir al causante en un pleito que este instara en vida contra el designado albacea, es solamente su sucesión.

No obstante, este caso es más complejo aún. Dos de las herederas son a su vez demandadas en el pleito del cual se pide la sustitución. Ante ese escenario, los herederos no demandados del causante, a saber, los hermanos Vilanova Hernández y Vilanova Román, deben ser los que sustituyan a este como parte demandante. Las herederas y albaceas designadas, a saber, las señoras Vilanova Serrano y Serrano Cruz, deben permanecer como parte demandada. Sería una aberración jurídica acceder a que las albaceas designadas aparezcan como demandantes y demandadas a la vez, pues nadie puede demandarse a sí mismo. Véanse, United States v. I.C.C., 337 U.S. 426, 430 (1949); Sentencia del Tribunal Supremo de España de 4 de julio de 2005, Núm. 555/2005, Tomo LXXI, Vol. IV, Repertorio de Jurisprudencia Aranzadi, pág. 10662.

Como ya se discutió, no hay duda de que toda la sucesión es parte indispensable en este pleito. Sin

embargo, las demandadas Vilanova Serrano y Serrano Cruz están impedidas de sustituir al causante en este pleito como demandante porque son la parte demandada. Eso no implica que hayan perdido su derecho a la porción del caudal hereditario, según dispuso el causante en su testamento abierto otorgado en 1994 y vinculante en derecho hasta que algún tribunal disponga lo contrario.

Sencillamente, en este caso habría un conflicto insalvable que se convertiría en un acto de omnipresencia jurídica si se permitiera que las herederas demandadas sean a su vez demandantes. Además, sus derechos como herederas no se verán trastocados toda vez que no están ausentes del pleito, sino más bien en un lado opuesto a los demás herederos. Desde esa postura podrán defender efectivamente sus derechos.

B

Ahora bien, el Tribunal de Apelaciones solucionó la controversia con el nombramiento de un administrador judicial para que se encargue de todo el caudal hereditario y para que represente a la sucesión en el caso de reivindicación de bienes. Dicha solución es errada.

Como muy bien señaló el foro apelativo intermedio en la pág. 35 de su sentencia, "todos los miembros de la sucesión Vilanova Díaz son partes indispensables en este pleito, por ser personas sin cuya presencia no puede adjudicarse la controversia y sus intereses pueden quedar afectados por cualquier sentencia que en su día se dicte". Apéndice, pág. 108. Entonces, si son partes indispensables,

¿cómo pueden ser removidos y sustituidos por un administrador judicial? Veamos el derecho pertinente en cuanto a la designación del administrador judicial.

El Art. 556 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2361, esboza quiénes son las personas legitimadas para solicitar la administración judicial, cuáles son los requisitos y cuál es el procedimiento a seguir en esos casos.[2] En específico, este artículo contiene

---

[2] En particular, el Artículo 556, supra, lee así:

"§ 2361. Petición de administración judicial

El albacea testamentario de la última voluntad de un finado, y en caso de que no lo hubiere nombrado o no dejare testamento con validez legal el cónyuge de la persona finada, o cualquier heredero forzoso, o persona que se presente como heredero testamentario, o legatario, o cualquier acreedor con título escrito no asegurado que tuviere algún crédito contra la persona finada, podrá, mediante una petición debidamente justificada en que se demuestren los hechos necesarios, solicitar la administración judicial de los bienes de dicha persona finada. La petición se presentará en la sala del Tribunal de Primera Instancia que tuviere jurisdicción en la última residencia de la persona finada o lugar donde radica la mayor parte de sus bienes, y en ella se hará constar bajo juramento:

(1) La muerte de la persona finada.

(2) Las circunstancias relativas a su último testamento, incluso la fecha en que lo otorgó y lugar en que se halla protocolizado; y en caso que hubiese muerto ab intestato, se hará constar que, según los informes y creencias del peticionario, no dejó testamento válido, especificándose la procedencia y fundamentos de tales informes y creencia.

(3) El interés y derecho de acción del peticionario.

(4) Los nombres y respectivos domicilios de las demás personas con derecho a sucesión en los bienes de la persona finada.

(5) Que la persona finada dejó bienes sujetos a partición con expresión de la cuantía y naturaleza de dichos bienes."

unos requisitos estrictos, los cuales incluyen una petición jurada. En este caso no se cumplió con los preceptos allí indicados.

De igual forma, el Art. 557 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2362, establece a quiénes el testador puede prohibirles que soliciten la administración judicial. En particular, dicho precepto expone:

**§ 2362. Cuándo no se decreta administración judicial; acreedores con créditos asegurados**

Si el testador hubiese prohibido expresamente en el testamento a los herederos voluntarios y legatarios de partes alícuotas una administración judicial de sus bienes, y hubiese nombrado una o más personas, facultándolas para que, con el carácter de albaceas, comisionados o contadores partidores, practicasen las operaciones divisorias de dichos bienes, no podrá decretarse la administración judicial de éstos.

Los acreedores que tengan asegurados sus créditos, y aquéllos a quienes los deudores dieren fianza bastante para responder de sus créditos independientemente de los bienes del finado, no tendrán derecho a pedir la administración judicial.

Este Artículo fusiona los Arts. 1039 y 1040 de la Ley de Enjuiciamiento Civil Española de 1881. Véase, D. Emilio Reus, Ley de Enjuiciamiento Civil, 2da. Ed., Madrid, Revista General de Legislación y Jurisprudencia, 1908, págs. 928-929. Al comentar los preceptos de la ley española, Reus comenta lo siguiente en lo pertinente a los herederos voluntarios:

[S]i el testador les ordena que se distribuyan la herencia en la forma por él establecida, y les prohíbe expresamente acudir para ello a los Tribunales, no podrán promover juicio de testamentaría sin incurrir en la pena que para

este caso les haya impuesto el testador, y están obligados a observar estrictamente las reglas por éste establecidas para el inventario, avalúo y división de sus bienes... En cuanto a los herederos forzosos, como por el artículo 813, párrafo 2.°, del Código Civil [nuestro Art. 741], el testador no puede imponerles gravamen ni condición alguna en su legítima, podrán promover dicho juicio, aun cuando el testador lo haya prohibido, sin que por ello sufran menoscabo en su legítima.

Íd., págs. 923-924.

En otras palabras, un testador no puede prohibir a sus herederos legitimarios que acudan al tribunal para solicitar la administración judicial de sus bienes. Esto sin duda podría lesionar su legítima y como conocemos, nuestro ordenamiento jurídico brinda una amplia protección al derecho de los herederos forzosos sobre ella. Véanse, Art. 741 del Código Civil, 31 L.P.R.A. sec. 2367; J.M. Manresa y Navarro, op cit., págs. 417, 418 y casos del Tribunal Supremo de España allí citados.

Sin embargo, este caso no versa sobre la petición de nombramiento de un administrador judicial. Por ende, aunque en estricto derecho se puede nombrar un administrador judicial para la sucesión Vilanova Díaz, los herederos no han seguido el proceso que establece el Código de Enjuiciamiento Civil para ello. Basta recordar la naturaleza rogada de nuestro derecho y que este Tribunal con sus decisiones no se puede convertir en abogado de ninguna de las partes pues eso viola los más básicos principios del debido proceso de ley. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da. Ed., San Juan, Publicaciones J.T.S., 2011, Tomo IV, pág. 1256. Dicho de

otro modo, "los tribunales son organismos que resuelven las disputas que se suscitan entre los ciudadanos y que sean llevadas ante su consideración, sin que les sea dable intervenir *motu proprio* en tales disputas". R. Elfren Bernier y J. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed. Rev., San Juan, Publicaciones J.T.S., 1987, pág. 3.

Por otro lado, el Art. 558 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2363, establece las ocasiones en que es necesario el nombramiento de un administrador judicial. De esta forma, la administración judicial será necesaria siempre que hayan herederos ausentes, menores o incapacitados que no estén debidamente representados. En Ab Intestato Balzac Vélez, 109 D.P.R. 670, 679 (1980), establecimos que aunque el Art. 558 especifica las circunstancias que hacen necesaria la administración judicial, no excluye otras. No obstante, la única controversia que tenemos que decidir hoy es quién sustituye al causante en un pleito de reivindicación de bienes. No está ante nuestra consideración una solicitud para nombrar un administrador judicial que represente al causante en el pleito. Y es que no hace falta pues todos los herederos son mayores de edad y pueden defenderse. Además, los herederos son partes indispensables y no pueden ser sustituidos por un administrador judicial. A diferencia de este caso, en Abintestato Marini Pabón, 107 D.P.R. 433 (1978) y en Abintestato Balzac Vélez, supra, sí se solicitó la administración judicial. Fue el Tribunal de Apelaciones

en este caso el que impuso un administrador que no se le solicitó.

Si bien es cierto que los hermanos Vilanova Hernández y Vilanova Román solicitaron de forma defectuosa el nombramiento de un administrador judicial ante el foro primario, también es correcto que cuando ese foro desestimó la petición de cartas testamentarias sin perjuicio, denegó la petición de administración judicial. De esa decisión los hermanos Vilanova Hernández y Vilanova Román no recurrieron. Fue con posterioridad a que el foro apelativo intermedio nombrara un administrador judicial que ellos enmendaron sus alegaciones para incluir eso en su petitorio.

Esa actuación claramente constituye un cambio de teoría que además de ser improcedente, es tardío. Dicho de otro modo, debido al sistema adversativo que rige en nuestra jurisdicción, como norma general, es necesario plantear los argumentos en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones para que luego se puedan aducir en este Foro. Esa es la práctica forense que rige en nuestra jurisdicción y a la cual este Tribunal tiene que brindar deferencia.

Es cierto que un "tribunal apelativo tiene la facultad inherente de considerar y resolver errores patentes que surjan de un recurso aun cuando éstos no hayan sido presentados por las partes". S.L.G. Flores-Jiménez v. Colberg, 173 D.P.R. 843, 851 (2008), citando a Hernández v. Espinosa, 145 D.P.R. 248, 264 (1998). Sin embargo, esa

norma excepcional tiene que ser limitada. De lo contrario, nos convertiríamos en un foro consultivo y adjudicaríamos controversias que no han sido planteadas y defendidas vigorosamente. En este caso, no se configura ninguna excepción que nos lleve a desechar la norma general.

Pero aun si para fines argumentativos concediéramos que procede decretar una administración judicial, la realidad es que esa administración no puede remover a los herederos del pleito ya que son partes indispensables.

En suma, el causante Vilanova Díaz debe ser sustituido por todos sus herederos no demandados, a saber, los hermanos Vilanova Hernández y Vilanova Román, en el pleito de reivindicación de bienes pues estos son la parte apropiada a la que alude la Regla 22.1 de Procedimiento Civil, supra.

III

El Art. 597 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2571, indica lo siguiente:

**§ 2571. Aceptación del cargo; expedición de cartas testamentarias**

Todo albacea que acepte el nombramiento hecho a su favor en un testamento deberá entregar al funcionario en cuya oficina se halla protocolado el testamento una aceptación del cargo por escrito, acompañada de un juramento, también por escrito, comprometiéndose a cumplir, del mejor modo que le fuere dable, sus obligaciones como albacea, **sin lo cual no podrá hacerse cargo de los bienes del finado.** La sala del Tribunal de Primera Instancia de la última residencia del finado o del lugar en que radican sus bienes, mediante la presentación de una certificación del notario u otro funcionario competente, en que conste haberse archivado dicha aceptación y juramento oficial, expedirá cartas testamentarias a favor del albacea, las cuales constituirán

prueba de su autoridad. Tan pronto como un administrador haya prestado su fianza y juramento oficial, el juez o tribunal que lo hubiere nombrado expedirá a su favor cartas de administración bajo su sello, en testimonio de su autoridad. (Énfasis nuestro.)

Aunque nuestra figura del albaceazgo es heredada de España, la realidad es que en ese país no existe tal cosa como una expedición de cartas testamentarias. Véase, en general, M. Albaladejo, El albaceazgo en el derecho español, Madrid, Ed. Tecnos, 1969. En cambio, para poder auscultar cuál es el procedimiento a seguir en estos casos, es necesario acudir al Derecho consuetudinario (common law) de Estados Unidos, porque es de allí que proviene esta figura. Véase, J.A. Schoenblum, Page on the Law of Wills, Cincinnati, Anderson Publishing CO., 2003, Sec. 1.3, pág. 13.

El término de cartas testamentarias se define como aquel "instrumento formal de autoridad y nombramiento dado a un ejecutor por el tribunal correspondiente, facultándolo a desempeñar su cargo".[3] (Traducción nuestra.) Black´s Law Dictionary, 5ta ed., West Publishing Co., 1979, pág. 815. Es decir, la norma general en el derecho sucesorio del Derecho consuetudinario estadounidense es que para que un ejecutor o albacea pueda hacerse cargo de un caudal hereditario es necesario que primero acuda ante el tribunal competente para que pruebe la existencia de un testamento, y que en este se le nombró ejecutor. Véanse, J.A. Schoenblum, op

---

[3] El texto original en inglés es el siguiente: *Formal instrument of authority and appointment given to an executor by the proper court, empowering him to enter upon the discharge of his office as executor.*

cit., pág. 13; Sec. 3-103 del Uniform Probate Code, Uniform Laws Annotated, Minnesota, West. Group, 1998, Vol. 8, pt. 2, sec. 3-103.

La aprobación del Art. 597, supra, se remonta a 1905 con la promulgación de la Ley de Procedimientos Legales Especiales. 1904-1905 Leyes de Puerto Rico, págs. 213-242. Como ya se comentó, no contamos con un historial legislativo que nos indique cuál fue la intención del legislador al añadir a nuestro ordenamiento jurídico sucesoral una figura del common law. No obstante, el texto del Art. 597 es claro al establecer que sin la expedición de las cartas testamentarias, el albacea o administrador no puede hacerse cargo de los bienes. Esto quiere decir que en esta jurisdicción ningún albacea facultado para administrar los bienes de una sucesión puede hacerlo sin que antes el tribunal expida las correspondientes cartas testamentarias. Ahora bien, aparte del Art. 597, supra, en Puerto Rico no existe otro estatuto que regule este procedimiento. Para poder llenar esa laguna y resolver la controversia, según nos exige el Art. 7 del Código Civil, 31 L.P.R.A. sec. 7, es necesario acudir al Derecho comparado y ver las soluciones que ofrece. Y es que después de todo, en los "casos apropiados será lícito el empleo del derecho común en sus múltiples y ricas versiones- la angloamericana, la original británica, la anglocanadiense y otras- a modo de derecho comparado, así como el uso de ejemplos de otros sistemas jurídicos". Valle v. Amer. Inter. Ins. Co., 108

D.P.R. 692, 697 (1979). Debido a que la figura de las cartas testamentarias no proviene de España, es un esfuerzo fútil analizar el derecho de ese país. Por tanto, este es un caso apropiado para acudir al derecho consuetudinario estadounidense.[4]

A

El *Uniform Probate Code* es una legislación modelo que produjo la *National Conference of Commissioners on Uniform State Laws.* Esta es producto de siete años de análisis durante los cuales se obtuvo el insumo de varias divisiones de la *American Bar Association.* R. Brucken, Uniform Probate Code and the Practice of Law in Ohio, 7 Akron L. Rev. 69 (1973). Esta legislación modelo recoge, entre otras cosas, todo lo relativo a la administración de los bienes de una herencia. Uniform Probate Code secs. 3-101 a 3-322, supra.

---

[4] La Jueza Asociada señora FIOL MATTA critica nuestro análisis de derecho comparado en torno a la figura de las cartas testamentarias, aunque reconoce que esa figura no proviene de España, sino de Estados Unidos. Utilizar un análisis de derecho comparado para auscultar cómo otros ordenamientos lidian con controversias jurídicas no es nuevo. Véanse, por ejemplo, Llorens et al. v. Arribas et al., Op. de 20 de diciembre de 2011, 2011 T.S.P.R. 204, 2012 J.T.S. 4, 184 D.P.R. __ (2011) (FIOL MATTA J.); CSMPR v. Carlo Marrero et als., Op. de 30 de junio de 2011, 2011 T.S.P.R. 99, 2011 J.T.S. 104, 182 D.P.R. __ (2011) (FIOL MATTA J.); Pueblo v. Rodríguez Pagán, Op. de 17 de junio de 2011, 2011 T.S.P.R. 92, 2011 J.T.S. 97, 182 D.P.R. __ (2011) (FIOL MATTA J.); Coop. Seg. Múlt. v. E.L.A., 180 D.P.R. 655 (2011) (FIOL MATTA J.); Fonseca Zayas v. Rodríguez Meléndez, 180 D.P.R. 623 (2011) (FIOL MATTA J.); Orsini García v. Srio. de Hacienda, 177 D.P.R. 596 (2009) (FIOL MATTA J.); Ramírez Sainz v. S.L.G. Cabanillas, 177 D.P.R. 1 (2009) (FIOL MATTA J.); Pueblo v. Sustache Sustache, 176 D.P.R. 250 (2009) (FIOL MATTA J.); Colón, Ramírez v. Televicentro de P.R., 175 D.P.R. 690 (2009) (FIOL MATTA J.) y Pueblo v. Hernández González, 175 D.P.R. 274 (2009) (FIOL MATTA J.).

En lo que nos concierne, conviene citar el inciso (f) de la Sección 3-203, supra, que establece:

> (f) Ninguna persona es apta para servir como albacea si:
>
> (1) Es menor de 21 años
>
> (2) Luego de un procedimiento formal, el tribunal determina que no es idóneo.[5]

(Énfasis y traducción nuestra.)

Según surge de lo anterior, el comité de expertos en la materia que diseñó el *Uniform Probate Code* estableció dos requisitos para poder ejecutar el cargo de albacea. En específico, (1) que la persona designada por el testador fuese mayor de edad y (2) que fuese idónea. Notamos que esta legislación modelo no definió el término idóneo. Al actuar así, delegó esa tarea en los tribunales de cada estado para que según surgieran controversias, definieran los contornos de esa figura.

El *Uniform Probate Code* no ha sido adoptado por todas las jurisdicciones de Estados Unidos.[6] Sin embargo, aunque

_____

[5] El texto original en inglés establece:

"f)    No person is qualified to serve as a personal representative who is:

(1)    under the age of [21];

(2)    a person whom the Court finds unsuitable in formal proceedings."

[6] Ha sido adoptado por las siguientes jurisdicciones: *Alaska, Arizona, Colorado, Florida, Hawaii, Idaho, Maine, Michigan, Minnesota, Montana, Nebraska, New Mexico, North Dakota, South Carolina, South Dakota y Utah*. Véase, (http://www.law.cornell.edu/uniform/probate.html),última visita 28 de septiembre de 2011.

no todos los estados han adoptado el lenguaje literal del

*Uniform Probate Code*, lo cierto es que sí han incorporado

un lenguaje similar. Pasemos a estudiar dos de esas

jurisdicciones ya que aunque sus decisiones no nos obligan,

sí nos persuaden porque han tenido la oportunidad de

analizar en detalle controversias similares a la que hoy

nos ocupa.[7]

---

[7] Aunque solo discutiremos en detalle las jurisdicciones de Louisiana y Ohio dado su desarrollo jurisprudencial de la figura del *executor*, existe legislación similar en los estados siguientes: *California*, Cal. Prob. Code Sec. 8420, In re Estate of Bawquier, 88 Cal. 302 (1891); *Florida*, Fla. Stat. sec. 733.301 y 733.303, DeVaughn v. DeVaughn, 840 So. 2d 1128 (2003); *Georgia*, Official Code Of Georgia Ann. sec. 53-6-40; *Illinois*, 755 I.L.C.S. sec. 5/9-1; *Massachusetts*, A.L.M. GL ch. 190b sec. 3-103; *Michigan*, M.C.L.S. secs. 700.3601 y 700.3613; *New Jersey*, N.J. Stat. sec. 3B:10-1; *New York*, N.Y. C.S.L. SCPA sec. 1414; *Pennsylvania*, 20 Pa. C.S. sec. 3156; *Virginia*, Va. Code Ann. Sec. 64.1-122.2; *Alabama*, Code of Ala. Secs. 43-2-20 y 43-2-22; *Alaska*, Alaska Stat. sec. 13.16.245; *Arizona*, A.R.S. sec. 14-3601, *Arkansas*, A.C.A. sec. 28-48-101; *Colorado*, C.R.S. sec. 15-12-601; *Connecticut*, Conn. Gen. Stat. sec. 45a-289, Appeal of Smith, 24 A. 273 (1892); *Washington State*, Rev. Code of Washington A. sec. 11.28.010; *Indiana*, Burns Ind. Code Ann. Sec. 29-1-7-4; *Iowa*, Iowa Code sec. 633.63; *Kansas*, K.S.A. sec. 59-701; *Wyoming*, Wyo. Stat. sec. 2-7-102; *Kentucky*, K.R.S. sec. 395.015; *Maine*, 18-A M.R.S.A. sec. 3-601; *Maryland*, MD Code, Estates and Trusts, sec. 6-101; *Minnesota*, M.S.A. sec. 524.3-103, *Missouri*, Missouri Ann. Stats. sec. 473.110; *Montana*, Mon. Code Anno. sec. 72-3-501; *Nebraska*, R.R.S. Neb. sec. 30-2444; *Nevada*, Nev. Rev. Stat. Ann. sec. 138.020; *New Hampshire*, New Hampshire RSA sec. 533.2; *New Mexico*, N.M. Stat. Ann. sec. 45-3-203; *North Carolina*, N.C. Gen. Stat. sec. 28-A-4-2; *Utah*, Utah Code Ann. sec. 75-3-203; *Oklahoma*, 58 Okl. St. sec. 126; *Oregon*, O.R.S. sec. 113.085; *Delaware*, 12 Del. C. sec. 1502; *Hawaii*, H.R.S. sec. 560:3-601; *Idaho*, Idaho Code sec. 15-3-601; *North Dakota*, N.D.C.C. sec. 30.1-12-03; *South Dakota*, S.D.C.L. sec. 29-A-3-103; *Mississippi*, Miss. Code. Ann. sec. 91-7-35; *Rhode Island*, R.I. Gen. Laws sec. 33-8-1, Geaber v. Wakefield Trust Co., 69 A.2d. 822 (1949); *Texas*, Texas Probate Code Ann, sec. 78; *South Carolina*, S.C. Code Ann. sec. 62-3-203; *Tennessee*, Tenn.

B

El Art. 3082 del Código de Procedimiento Civil de Louisiana, La. C.C.P. 3082, establece que

> [a] menos que la persona designada como albacea en el testamento sea descalificada por cualesquiera de las razones expuestas en el Artículo 3097, la corte deberá rendir una orden, a su solicitud, para la confirmación, confirmándola como ejecutora testamentaria y ordenando la expedición de cartas testamentarias luego de que ella haya prestado juramento al cargo y satisfecho fianza, de ser necesario.[8] (Traducción nuestra.)

Al igual que nuestro Art. 597, supra, el Art. 3082 de Louisiana exige que el albacea preste juramento y afirme que desempeñará el cargo propiamente.[9] No obstante, ambos se diferencian en que el segundo contempla la posibilidad de que no se expidan cartas testamentarias a favor del albacea si se cumple con algunas de las razones que esboza el Art.

---

Code. Ann. sec. 30-1-101; *Wisconsin*, Wis. Stat. sec. 856.23 y *Vermont*, 14 V.S.A. sec. 902.

[8] El texto original en inglés es el siguiente:
"Unless the person named in the testament as executor is disqualified on any of the grounds assigned in Article 3097, the court shall render an order upon his petition for confirmation, confirming him as testamentary executor and directing the issuance of letters testamentary to him after he has taken his oath of office and furnished security, if required."

La. C.C.P. 3082.

[9] Nos dice el tratadista Vélez Torres que "la palabra albacea procede del árabe *Al Waci*, que significa *Ejecutor*. J. Vélez Torres, Derecho de Sucesiones, San Juan, Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1992, Tomo IV, Vol. III, pág. 338. Aunque somos conscientes de que la figura del albaceazgo no es idéntica al *executor* del derecho consuetudinario, en el análisis que procede utilizaremos en todo momento el término albacea, en aras de brindar uniformidad a esta figura.

3097 de ese código. En específico, el Art. 3097 del Código de Procedimiento Civil de Louisiana, La. C.C.P. 3097, señala en lo pertinente:

A. Ninguna persona puede ser confirmada como albacea o albacea dativo, administrador provisional o administrador si es:

1. Menor de dieciocho años;

2. Persona que en juicio adversativo se le haya probado que está mentalmente incompetente;

3. Una persona convicta de delito grave bajo las leyes de los Estados Unidos o de cualquier estado o territorio;

4. Un no residente del estado que no haya designado a un agente residente para el procesamiento de todas las acciones y procedimientos relacionados a la sucesión;

5. Una corporación no autorizada a realizar negocios en este estado; o

6. Una persona que luego de juicio adversativo se le haya probado que no está capacitada para la designación debido a conducta inmoral.[10]

---

[10] El texto original en inglés establece:
"A. No person may be confirmed as testamentary executor, or appointed dative testamentary executor, provisional administrator, or administrator who is:

(1) Under eighteen years of age;

(2) Interdicted, or who, on contradictory hearing, is proved to be mentally incompetent;

(3) A convicted felon, under the laws of the United States or of any state or territory thereof;

(4) A nonresident of the state who has not appointed a resident agent for the service of process in all actions and proceedings with respect to the succession, and caused such appointment to be filed in the succession proceeding;

(5) A corporation not authorized to perform the duties of the office in this state; or

(6) A person who, on contradictory hearing, is proved to be unfit for appointment because of bad moral character."

La. C.C.P. Art. 3097.

(Traducción nuestra.)

Se puede constatar en este Art. 3097, _supra_, que el legislador del estado de Louisiana no permite que se expidan cartas testamentarias a favor de menores, incapaces, convictos de delito grave, personas no residentes si no han designado un agente residente en el estado, corporaciones no autorizadas a realizar negocios en el estado y personas que, luego de una vista adversativa, se les prueba conducta inmoral. De las personas descalificadas para actuar como albacea al amparo del Art. 3097, _supra_, todas se explican por sí mismas excepto el inciso seis que hace referencia a la persona con conducta inmoral. Aunque el Tribunal Supremo del estado de Louisiana no se ha expresado sobre ese término, el Cuarto Circuito del Tribunal de Apelaciones de ese estado tuvo la oportunidad de examinarlo en _Succession of Horrell_, 709 So. 2d. 1069 (1998), cert. denegado 720 So. 2d. 669 (1998). Allí, se manifestó que "[c]onducta inmoral no solo incluye los tipos tradicionales de comportamiento o las malas acciones anteriores que indican [que el albacea] no está en condiciones de asumir las responsabilidades como administrador de la sucesión". Íd., pág. 1071.[11] (Traducción nuestra.) En particular, ese foro dictaminó que la

_____

[11] El texto original en inglés es el siguiente: "'Bad moral character' does not only include the traditional types of behavior or previous bad acts which would indicate that one is not fit to assume the responsibilities of administrator of a succession."

participación del hijo del causante en la ejecución de un testamento que luego se declaró inválido y en la ejecución de una donación hecha por el causante también constituían la conducta inmoral a la que hace referencia el Art. 3097, supra. Íd.

Sin embargo, el foro apelativo intermedio de Louisiana fue más allá al establecer que aun en el supuesto de que la conducta del hijo del causante fuese inmaculada en lo que concernía a la ejecución del testamento y de la donación, las circunstancias del caso, que incluía la animosidad existente entre las partes, eran suficientes para concluir que no se podía permitir que el hijo fuese el albacea. Íd.

En otras palabras, no se permitió que se expidieran cartas testamentarias a favor de un hijo al que se le probó que participó en la ejecución de un testamento que posteriormente fue declarado inválido y que recibió una donación que era cuestionada judicialmente. Sin embargo, todo esto ocurrió luego de que se celebrara una vista adversativa en la que las partes pudieron presentar toda la evidencia pertinente y se cumplió con los requisitos del debido proceso de ley.

C

Por otra parte, la Sección 2113.5 del Código revisado y anotado de Ohio esboza en lo pertinente que

> Cuando un testamento es aprobado y permitido, el tribunal deberá expedir cartas testamentarias al albacea nombrado en el testamento..., si es idóneo, competente, acepta el cargo y presta la

correspondiente fianza, de ser necesaria.[12]
(Traducción nuestra.)

Ohio Rev. Code Ann. 2113.5

De esta definición resalta que el albacea tiene que tener el calificativo de <u>idóneo</u>. El Tribunal Supremo de Ohio mencionó en <u>In re Estate of Henne</u>, 421 N.E. 2d. 506, 508 (1981), "que el término idóneo no está definido por ley, y por ende, sus límites son establecidos solamente mediante el análisis de la jurisprudencia". (Traducción nuestra.) Así pues, en Ohio el nombramiento de un albacea depende de que en un análisis caso a caso, el tribunal determine que este es idóneo para asumir el cargo.[13] Sobre el particular, en <u>In re Estate of Young</u>, 4 Ohio App. 2d. 315, 321-322 (1964), se dijo que el interés adverso y antagónico del albacea designado con la sucesión puede conllevar que no se expidan las cartas testamentarias, dependiendo de la naturaleza y el alcance de ese interés

---

[12] El texto completo en inglés es el siguiente:

"When a will is approved and allowed, the probate court shall issue letters testamentary to the executor named in the will or to the executor nominated by holders of a power as described in section 2107.65 of the Revised Code, or to the executor named in the will and to a co-executor nominated by holders of such a power, if he is suitable, competent, accepts the appointment, and gives bond if that is required."

Ohio Rev. Code Ann. 2113.5.


[13] Para una crítica a los tribunales que no expiden cartas testamentarias a favor del albacea nombrado en testamento véase, L. Kirkpatrick, <u>Treading on Sacred Ground: Denying the Appointment of a Testator´s Nominated Personal Representative</u>, 63 Fl. L. Rev. 1041 (2011).

adverso, de la relación entre las partes, u otras circunstancias subyacentes en el caso particular. A renglón seguido el tribunal añadió que

> [e]n vista de esos principios, no se puede desarrollar una regla específica que aplique a todos los casos. Sin embargo, el criterio general es evidente. La naturaleza fiduciaria de la posición de albacea es clara y las obligaciones que surgen de esa relación de confianza son evidentes. El derecho requiere que el fiduciario sea una persona desinteresada, tanto personalmente como entre los beneficiarios. Por otro lado, el derecho le da una preferencia a la confianza que un testador deposita en una persona en particular…. El término idóneo que aparece en la ley lidia con el conflicto entre esos dos propósitos que el derecho persigue. En nuestra opinión, se contempla que para ser idónea, una persona debe ser razonablemente desinteresada. En caso de conflicto de intereses contrarios y antagónicos con la posición de fiduciario, la pregunta se convierte en una de sopesar el grado de conflicto a la luz de la totalidad de las circunstancias.

> Íd. (Traducción nuestra.)

Este análisis lo adoptó el Tribunal Supremo de Ohio en In re Estate of Henne, supra, y concluyó que el albacea nombrado en el testamento no era idóneo. Íd., pág. 510. Al así resolver, reconoció que se debe otorgar gran deferencia al nombramiento que hace el causante en el testamento. No obstante, subrayó una serie de factores para determinar si la persona es razonablemente desinteresada; en otras palabras, si es idónea para ser albacea. Estos factores se pueden apuntalar de la siguiente forma:

1. La naturaleza y la extensión de la hostilidad y desconfianza entre las partes.

2. El grado de conflicto de intereses y obligaciones tanto personales como financieras [del albacea designado].

3. Las complejidades adicionales que puedan subyacer en el caso en particular.

Íd., pág. 509.

D

En el caso que nos ocupa, el Tribunal de Primera Instancia desestimó sin perjuicio la petición de cartas testamentarias hasta que se ventilara el pleito de impugnación de testamento. Erró al proceder así pues con su actuación, denegó en los méritos la expedición de cartas testamentarias.

Es cierto que en la mayoría de los casos el procedimiento de expedición de cartas testamentarias es uno de jurisdicción voluntaria, que se tramita en el despacho del juez de primera instancia sin mayores incidentes. Batiz v. Tribunal Superior, 104 D.P.R. 41 (1975). Incluso, ya se pueden resolver en el despacho de un notario. Véanse, Reglas 109-112, In re: Aprobación de Reglas para la Implantación de la Ley de Asuntos no Contenciosos ante Notario, Resolución de 16 de septiembre de 2011, 2011 T.S.P.R. 135, 2011 J.T.S. 134, 182 D.P.R.__ (2011). Sin embargo, de existir oposición a que se expidan las cartas, lo que procede es convertir el proceso en uno contencioso y seguir el trámite ordinario. Y es que

> con frecuencia sucede que dentro de un procedimiento de jurisdicción voluntaria comparecen al tribunal varias partes en defensa de intereses completamente opuestos. Cuando así ocurre... se establece una genuina controversia a ser adjudicada por un tribunal de instancia mediante un trámite dotado de múltiples características análogas a las de un juicio contencioso o plenario.

Íd., págs. 45-46.

No podemos perder de perspectiva que nuestro ordenamiento jurídico busca dar cumplimiento a la voluntad del testador en la disposición de sus bienes siempre y cuando ello no sea contrario a la ley. Torre Ginés v. E.L.A., 118 D.P.R. 436, 445 (1987). De esta manera, "[l]o fundamental es que prevalezca la voluntad real del testador y el rol judicial en materia de interpretación testamentaria consiste en descubrir dicha voluntad a fin de que se produzcan en su día los efectos queridos por el testador dentro del marco permitido por ley". Moreda v. Rosselli, 150 D.P.R. 473, 480 (2000). De igual forma, en innumerables ocasiones, "este Tribunal ha expresado que la voluntad del testador es la ley de la Sucesión". Íd. Véanse, además, Fernández Franco v. Castro Cardoso, 119 D.P.R. 154 (1986); Calimano Díaz v. Rovira Calimano, 113 D.P.R. 702 (1983); Vda. de Sambolín v. Registrador, 94 D.P.R. 320 (1967). En el caso que nos ocupa, existe un testamento abierto que goza de la fe pública notarial y es válido y vinculante hasta que se pruebe lo contrario. Véanse, Art. 2 de la Ley Notarial de 1987, 4 L.P.R.A. sec. 2; In re Rivera Aponte, 169 D.P.R. 738, 741 (2007).

Así pues, al tener presente que la voluntad del testador plasmada en el testamento es vinculante, analicemos los criterios que se deben auscultar cuando hay objeción a que se expidan las cartas testamentarias.

En vista de que nuestra legislación no establece cuáles son los factores que tiene que examinar el juez del foro primario al dilucidar si expide las cartas testamentarias, es necesario que este Foro actúe y los supla.

Como norma general, se debe cumplir la voluntad del testador y expedir cartas testamentarias a favor del albacea nombrado en el testamento. Sin embargo, hay que tener presente la prohibición que establece el Art. 815 del Código Civil, 31 L.P.R.A. sec. 2512: "No podrá ser albacea el que no tenga capacidad para obligarse. El menor no podrá serlo, ni aun con la autorización del padre o tutor". Es decir, en nuestra jurisdicción, a diferencia de la de Louisiana, la única razón que recoge nuestro ordenamiento jurídico para no ser nombrado albacea es la incapacidad de poder obligarse. Esta incluye la minoridad, prodigalidad, embriaguez habitual y la sordomudez que impida comunicarse efectivamente por cualquier medio. Art. 25 del Código Civil, 31 L.P.R.A. sec. 82.

No obstante, las limitaciones establecidas en el Código Civil para ejercer el albaceazgo no son taxativas. Es evidente que la persona designada albacea tiene que ajustarse al principio que regula su misión, la fiducia. De esta forma, cuando el albacea acepta el cargo, se obliga a

desempeñarlo fielmente. Art. 821 del Código Civil, 31 L.P.R.A. sec. 2518; Albaladejo, op. cit., pág. 397. "Su desempeño requiere la diligencia de un buen padre de familia". González Muñiz, Ex parte, 128 D.P.R. 565, 571-573. Véanse, además, Art. 1057 del Código Civil, 31 L.P.R.A. sec. 3021; Gómez Ysabel, Problemas Fundamentales del Ejercicio del Albaceazgo, Madrid, Ed. Reus, 1963, pág. 48. Debido a la naturaleza fiduciaria que conlleva el cargo de albacea, según expuesta por la doctrina civilista, concluimos que está implícito en nuestro ordenamiento legal el elemento de la idoneidad que la ley en estados como Ohio establece expresamente. In re Estate of Henne, supra. Es decir, ambos sistemas legales -el civil y el consuetudinario- coinciden en ese aspecto. En otras palabras, además de lo establecido por el Art. 815 del Código Civil, supra, todo albacea tiene que ser idóneo para ocupar el cargo. Después de todo, "[p]or la aceptación se obliga el albacea a desempeñar el cargo bien y fielmente, respondiendo personalmente de todos los perjuicios ocasionados por dolo o negligencia a él imputables". L. Puig Ferriol, El albaceazgo, Barcelona, Ed. Bosch, 1967, pág. 127.

Claro está, se debe presumir que todo albacea designado por el testador es idóneo. Sin embargo, en casos como el que nos ocupa, en el que existe una controversia genuina sobre la idoneidad del albacea, es necesario que el foro primario reciba prueba sobre ese particular. Para

poder determinar si se cumple con ese requisito, el foro primario debe sopesar los siguientes factores:

1. La naturaleza y la extensión de la hostilidad y desconfianza entre el albacea designado y la sucesión.

2. El grado de conflicto de intereses y obligaciones tanto personales como financieras del albacea designado.

3. Las complejidades adicionales que puedan subyacer en el caso en particular.

Al aplicar estos criterios, el Tribunal de Primera Instancia tendrá un marco teórico que le permitirá ejercer su función y determinar si procede la expedición de cartas testamentarias. Lo que no procede es archivar sin perjuicio una petición de expedición de cartas testamentarias con el pretexto de que en otro pleito se impugna el testamento que contiene el nombramiento del albacea. Eso abriría la puerta para que herederos disgustados con el albacea seleccionado impugnen viciosamente el testamento otorgado para retrasar e impedir la labor de este último. Al fin y al cabo, nuestras decisiones tienen el propósito de garantizar "una solución justa, rápida y económica de todo procedimiento". Regla 1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V.

IV

Finalmente, es necesario hacer unas manifestaciones que aclaren el alcance de nuestros pronunciamientos. En primer lugar, nuestras expresiones sobre el Art. 597 del

Código de Enjuiciamiento Civil, supra, se limitan al ejercicio del albaceazgo propiamente, que requiere la expedición de cartas testamentarias, y no a la aceptación del cargo. Como es conocido, no "es condición de validez de la aceptación del cargo acudir al tribunal para que se expidan las correspondientes cartas testamentarias". E. González Tejera, op cit., pág. 548. Por tal razón, en Andino v. Andino, 83 D.P.R. 138, 140-141 (1961), expresamos que existen dos tipos de aceptación. La primera es la tácita que se configura cuando no se renuncia al cargo dentro de los seis días después de conocer de la muerte del testador o del nombramiento por testamento. Art. 820 del Código Civil, 31 L.P.R.A. sec. 2517. La segunda es la expresa y se configura cuando se acude al tribunal al amparo del Art. 597 del Código de Enjuiciamiento Civil, supra.

De igual forma, nuestros pronunciamientos sobre la figura del albaceazgo no intentan definir cuáles son las facultades del albacea cuando el testador no las especifica. En Flecha v. Lebrón, 166 D.P.R. 330 (2005), este Foro no pudo llegar a un acuerdo sobre esa controversia y en el caso que nos ocupa es innecesario hacerlo porque en el testamento abierto otorgado en 1994 el causante le otorgó a la albacea poderes amplios. Apéndice, págs. 59-60. Así pues, resultaría puro dictum abordar ese tema.

V

Por los fundamentos antes expuestos, se revoca la Sentencia emitida por el Tribunal de Apelaciones en el recurso CC-2009-303. Se devuelve el caso al Tribunal de Primera Instancia para que proceda con la sustitución de parte según lo resuelto aquí. Por otro lado, se confirma la Sentencia emitida por el Tribunal de Apelaciones en el recurso CC-2009-591. Se envía el caso al foro primario para que atienda en sus méritos la petición de cartas testamentarias de forma consecuente con lo resuelto aquí.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Adolfo Vilanova Díaz, quien comparece por sí y en representación de Superior Paints Manufacturing Company, Inc., Reliance Caribbean, Inc., Banner Paints, Inc. y Vilco Chemicals, Inc., representado a su vez por su tutora Sonia Vilanova Hernández | CC-2009-303 CC-2009-591 |

Demandantes-recurridos

v.

Diana Velia Vilanova Serrano, Fiduciaria del Fideicomiso Serrano Cruz, como Directora y Principal Oficial Ejecutiva de Superior Paints Manufacturing, Co., Inc. y de las restantes Entidades Corporativas que componen las Empresas Vilanova y en representación de sus hijos menores de edad Gabriel Ernesto Detres Vilanova y Diana Iris Detres Vilanova;

Iris Belia Serrano Cruz
   Demandadas-peticionarias

Y

Francisco González Dávila, Marta Luz Báez Rosado y la Sociedad Legal de Gananciales constituida entre ambos, por sí y como Director de Superior Paints Manufacturing Co., Inc.;

ABC Insurance Company;

Fideicomiso Serrano Cruz;

DEF Insurance Company;

Paul W. Formby Fernández, su esposa Fulana Formby y la Sociedad Legal de Gananciales constituida entre ambos; Fideicomiso Vilanova Serrano;

GHI Insurance Company;

Allmerica    Financial    Life
Insurance & Annuity Company;

Allmerica Investments, Inc.;

JKL Insurance Company;

Miguel A. Rivera Rivera, su
esposa Fulana Rivera y la
Sociedad   de   Gananciales
constituida entre ambos;

MNO Insurance Company

CPA Mengano de tal, su esposa
mengana de tal y la Sociedad
Legal    de    Gananciales
constituida entre ambos;

Doe Accountants, Inc.

PQR Insurance Company

Terceros Sutanos

STU Insurance Companies
Demandados

SENTENCIA

En San Juan, Puerto Rico, a 21 de marzo de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la Sentencia emitida por el Tribunal de Apelaciones en el recurso CC-2009-303. Se devuelve el caso al Tribunal de Primera Instancia para que proceda con la sustitución de parte según lo resuelto aquí. Por otro lado, se confirma la Sentencia emitida por el Tribunal de Apelaciones en el recurso CC-2009-591. Se envía el caso al foro primario para que atienda en sus méritos la petición de cartas testamentarias de forma consecuente con lo resuelto aquí.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal. La Jueza Asociada señora Fiol Matta emite una opinión disidente a la cual se unen el Juez

Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez. La Jueza Asociada señora Pabón Charneco no interviene.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Juan Adolfo Vilanova Díaz, quien comparece por sí y en representación de Superior Paints Manufacturing Company, Inc., Reliance Caribbean, Inc., Banner Paints, Inc. y Vilco Chemicals, Inc., representado a su vez por su tutora Sonia Vilanova Hernández<br>    Demandantes-recurridos | | *CERTIORARI* |
| v. | CC-2009-303 | |
| Diana Velia Vilanova Serrano, Fiduciaria del Fideicomiso Serrano Cruz, como Directora y Principal Oficial Ejecutiva de Superior Paints Manufacturing, Co., Inc. y de las restantes Entidades Corporativas que componen las Empresas Vilanova y en representación de sus hijos menores de edad Gabriel Ernesto Detres Vilanova y Diana Iris Detres Vilanova;<br><br>Iris Belia Serrano Cruz<br>   Demandadas-peticionarias | cons. con<br><br>CC-2009-591 | |
| Y | | |
| Francisco González Dávila, Marta Luz Báez Rosado y la Sociedad Legal de Gananciales constituida entre ambos, por sí y como Director de Superior Paints Manufacturing Co., Inc.;<br><br>ABC Insurance Company;<br><br>Fideicomiso Serrano Cruz;<br><br>DEF Insurance Company;<br><br>Paul W. Formby Fernández, su esposa Fulana Formby y la Sociedad Legal de Gananciales constituida entre ambos; | | |

Fideicomiso Vilanova Serrano;

GHI Insurance Company;

Allmerica Financial Life Insurance & Annuity Company;

Allmerica Investments, Inc.;

JKL Insurance Company;

Miguel A. Rivera Rivera, su esposa Fulana Rivera y la Sociedad de Gananciales constituida entre ambos;

MNO Insurance Company

CPA Mengano de tal, su esposa mengana de tal y la Sociedad Legal de Gananciales constituida entre ambos;

Doe Accountants, Inc.

PQR Insurance Company

Terceros Sutanos

STU Insurance Companies
          Demandados

Opinión disidente emitida por la Jueza Asociada señora FIOL MATTA a la cual se unen el Juez Presidente señor HERNÁNDEZ DENTON y la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ

En San Juan, Puerto Rico, a 21 de marzo de 2012.

La disputa entre los miembros de la Familia Vilanova es compleja y ha conllevado numerosos litigios durante más de una década. Ante nuestra atención se encuentran dos de estas controversias: (1) quiénes deben sustituir al demandante fenecido don Juan Adolfo Vilanova Díaz en una acción que éste instara en vida contra su hoy heredera-albacea para reivindicar sus bienes y (2) si procede emitir

cartas testamentarias a favor de esa heredera, antes de que recaiga una sentencia firme sobre la validez del testamento en el que se le designa albacea, para que administre el caudal hereditario del que alegadamente sustrajo bienes.[14]

La Opinión mayoritaria determina que, en el pleito de reivindicación de bienes, el causante debe ser sustituido únicamente por los herederos no demandados. Así, revoca la decisión del foro apelativo de acceder a nombrar un administrador judicial que represente a toda la comunidad hereditaria, incluyendo a la heredera-albacea-demandada, y vele por la buena administración del caudal hasta que se resuelvan los conflictos sobre la validez del testamento. Asimismo, una mayoría del Tribunal decide que la solicitud de cartas testamentarias, que se había desestimado sin perjuicio en lo que se resolvía el pleito de impugnación de testamento, tiene que evaluarse en el foro de instancia de acuerdo con ciertos criterios que se establecen en la Opinión. Dichos criterios son copiados de un dictamen de un tribunal de Ohio, luego de un ejercicio hermenéutico que considero equivocado e innecesario.

Disiento de la manera en la que la Opinión mayoritaria resuelve ambas controversias. Por entender, además, que una narración pormenorizada de los hechos es necesaria para

---

[14] Actualmente, además de los dos recursos de certiorari ante el Tribunal Supremo, que fueron consolidados y se atienden en esta Opinión, está pendiente en el Tribunal de Apelaciones el caso KLAN 2011 1211 (Caso K AC 2008-0372 en el Tribunal de Primera Instancia), en el que los hermanos Vilanova Hernández y Vilanova Román impugnan el testamento de don Juan Adolfo.

comprender las complejidades de este caso, discuto los mismos en detalle a continuación.

I

Los protagonistas de estas controversias son los siete hijos e hijas de don Juan Adolfo Vilanova: Sonia Maritza, Ricardo Adolfo, Ivonne Catherine, Diana Gloria y Sylvia Vilanova Hernández, Diana Velia Vilanova Serrano y Annie Vilanova Román; así como su viuda, Iris Belia Serrano Cruz.[15] La historia gira alrededor de la voluntad que expresó don Juan Adolfo en su testamento y del caudal millonario que dejó a estas ocho personas al fallecer en el 2007. Pero los sucesos que dieron pie a las controversias familiares comenzaron mucho antes de su muerte.

Cuando don Juan Adolfo otorgó su testamento, el 23 de junio de 1994, ya había experimentado quebrantos de salud que podían crear duda sobre su capacidad mental.[16] Sin

---

[15] Los cinco hermanos y hermanas Vilanova Hernández son hijos de don Juan Adolfo con su primera esposa, Gloria Hernández Moloney, de quien se divorció en abril de 1966. En 1961, estando casado con Hernández Moloney, don Juan Adolfo procreó a Diana Velia junto a la señora Serrano Cruz, con quien se casó luego, bajo el régimen de sociedad de gananciales, en marzo de 1972; se divorciaron en enero de 1985 y se volvieron a casar en septiembre de 1992, con capitulaciones que establecieron la total separación de bienes. La hermana menor, Annie, es fruto de la relación de don Juan Adolfo con la señora Ana Román Crespo en 1979, vigente su primer matrimonio con Serrano Cruz. De otro lado, Ricardo Adolfo Vilanova Hernández falleció en abril de 2010, por lo que autorizamos que fuera sustituido por sus herederos: Ricardo Javier y Adolfo José Vilanova Fraticelli, Abimelec Vilanova Ocasio y Elizabeth González León. *Véase* Regla 42, Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI R. 42.

[16] Don Juan Adolfo tenía 75 años de edad cuando otorgó el testamento. Según sus récords médicos, presentaba síntomas

embargo, no fue declarado incapaz judicialmente sino hasta ocho años después.[17]

En su testamento abierto, don Juan Adolfo destinó el tercio de legítima del caudal a sus siete hijos e hijas en partes iguales; la totalidad del tercio de mejora a su hija Diana Velia Vilanova Serrano, a ser pagado en acciones de su compañía más importante, Pinturas Superior o Superior Paint Manufacturing Company, y la totalidad del tercio de libre disposición a su esposa Iris Belia Serrano Cruz, quien recibiría además su usufructo viudal.[18] En la escritura, el testador designó albacea y contadora partidora a Vilanova Serrano, quien sería sustituida por Serrano Cruz de ser necesario. Según el testamento, don Juan Adolfo les recomendó a sus albaceas defender el testamento en todo momento, les prorrogó el plazo del

---

de demencia desde el 1993 y alucinaba debido a su problema de alcoholismo.

[17] En el testamento se consignó que el notario y los testigos instrumentales tenían la impresión de que don Juan Adolfo gozaba de plena capacidad mental, así como que el testador declaró que la tenía y que un doctor y un psicólogo lo habían corroborado. *Véase* Testamento abierto de Juan Adolfo Vilanova Díaz, Escritura Número 30, otorgada ante el notario Eduardo R. Guzmán Valiente, el 23 de junio de 1994 [en adelante, Testamento de 1994]. Antes de la declaración judicial de enajenación mental, no es necesario que los doctores que evalúan la capacidad comparezcan al otorgamiento. *Véanse* los artículos 612 a 615 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 2112-2115.

[18] Si Serrano Cruz le premoría, el tercio libre pasaría a Vilanova Serrano. Se crearon dos fideicomisos para casos en que ellas no pudieran manejar el dinero. El Fideicomiso Vilanova Serrano se creó en agosto de 2001 y el Fideicomiso Serrano Cruz en enero de 2002; ambos benefician a los dos hijos menores de edad de Vilanova Serrano.

albaceazgo por el término que durara cualquier litigio relacionado con la herencia y les relevó del pago de fianza.[19] También les confirió a sus albaceas amplias facultades para defender el testamento y transigir litigios relacionados con el caudal; ordenó que todas las gestiones sobre el caudal las realizaran las albaceas de forma extrajudicial y sancionó cualquier petición de intervención judicial con el testamento pedida por los herederos con la pérdida de derechos hereditarios.[20]

Ese testamento es objeto de impugnación. Los hermanos Vilanova Hernández y Vilanova Román alegan que el testamento fue diseñado para aumentar la porción que recibiría Vilanova Serrano respecto al testamento anterior[21] y que don Juan Adolfo se encontraba incapacitado

---

[19] Además de las facultades conferidas por la ley, el testador concedió a sus albaceas las siguientes potestades: tomar posesión de todos sus bienes inmediatamente él muriera y administrarlos, realizar actos de dominio sobre bienes muebles e inmuebles, pagar sus deudas y cobrar sus créditos, retirar fondos depositados en instituciones financieras, firmar cheques y documentos negociables, realizar toda clase de operaciones bancarias, hacer negocios en las entidades de las que era accionista o socio, traspasar sus acciones a nombre de la albacea y cobrar los dividendos, suscribir toda clase de documentos y hacer las modificaciones que creyeran oportunas. *Véase* Testamento de 1994.

[20] Asimismo, prohibió la colación de las donaciones; estableció que debían respetarse como válidas todas las disposiciones testamentarias referentes a las acciones corporativas de Pinturas Superior y señaló que esas instrucciones no tenían el objetivo de privar a ningún heredero de lo que le correspondía. *Íd.*

[21] No era la primera vez que don Juan Adolfo enmendaba su declaración de última voluntad. Antes del Testamento de 1994, había otorgado otros tres testamentos abiertos en 1990, 1991 y 1992.

mentalmente para testar cuando lo hizo.[22] El Tribunal de Primera Instancia resolvió que Don Juan Adolfo estaba capacitado para testar. La revisión de esa determinación se encuentra ante el Tribunal de Apelaciones.

La declaración de incapacidad de don Juan Adolfo se solicitó el 1 de noviembre de 2000.[23] El 20 de marzo de 2002, se le nombró un administrador judicial provisional al testador. El foro de instancia lo declaró incapaz para regir sus bienes y su persona el 12 de diciembre de 2002 y le nombró a una procuradora de relaciones de familia como tutora provisional.[24] En su Resolución, el juez de instancia relató que el perito del Tribunal opinó que don Juan Adolfo sufría de demencia tipo Alzheimer, complicada por lesiones

---

[22] *Véase* Demanda de impugnación de testamento y descalificación de albacea, presentada en el Tribunal de Primera Instancia de San Juan, el 18 de marzo de 2008, Caso K AC 2008-0372. Alegan que Serrano Cruz y Vilanova Serrano mantenían a don Juan Adolfo aislado y sedado con altas dosis de medicamentos, que no le permitían a los hermanos verlo y que lo engañaron para que otorgara el testamento.

[23] Esta solicitud de declaración de incapacidad fue presentada por Ana Román Crespo, en representación de su hija menor de edad Annie Vilanova Román, dentro de un pleito de reclamación de alimentos en el Tribunal de Primera Instancia de Bayamón. Los hermanos Vilanova Hernández intervinieron, en febrero de 2001, para oponerse a que se designara tutora de don Juan Adolfo a Serrano Cruz o a Vilanova Serrano. Posteriormente, el 22 de noviembre de 2001, Serrano Cruz también pidió que declararan incapaz a su esposo en el Tribunal de Primera Instancia de San Juan, y todos los hermanos solicitaron intervención.

[24] Resolución del Tribunal de Primera Instancia de Bayamón, D AL 1998-0270, 12 de diciembre de 2002.

vasculares cerebrales y por los efectos del abuso del alcohol.[25]

Dentro del pleito de incapacidad, los hermanos Vilanova Hernández pidieron que se le ordenara a Vilanova Serrano y Serrano Cruz permitirles visitar a su padre.[26] El 30 de octubre de 2001, el Tribunal ordenó que se llevaran a cabo relaciones paterno filiales entre don Juan Adolfo y sus hijos mayores, y le nombró un defensor judicial hasta tanto el perito del Tribunal examinara su estado físico y mental.[27] A Sonia Vilanova Hernández se le concedió la tutela de su padre el 27 de octubre de 2003 y la custodia física el 14 de noviembre de 2003.

Luego de la declaración de incapacidad, el 12 de diciembre de 2003, el Tribunal de Primera Instancia determinó que "estando incapacitado Juan Adolfo Vilanova Díaz, se han transferido bienes cuantiosos de éste a nombre y para beneficio de Iris Belia Serrano Cruz y Diana Velia Vilanova Serrano y en detrimento del incapaz".[28] En ese

---

[25] Las partes del presente pleito estipularon la incapacidad a octubre de 2002. A octubre de 2002, don Juan Adolfo se encontraba en una etapa en que tenía problemas de memoria, orientación y locomoción, a la que se llega luego de cuatro a seis años de enfermedad.

[26] Los hermanos Vilanova Hernández alegan que Serrano Cruz y Vilanova Serrano aprovecharon la incapacidad de don Juan Adolfo para tomar el control gerencial de las empresas Vilanova. En 1994, Vilanova Serrano obtuvo la presidencia de Pinturas Superior y despidió a Ricardo Vilanova Hernández.

[27] Resolución del Tribunal de Primera Instancia de Bayamón, D AL 1998-0270, 30 de octubre de 2001.

[28] Resolución del Tribunal de Primera Instancia de Bayamón, D EX 2002-0080, 12 de diciembre de 2003.

momento, la investigación sobre las transacciones económicas de don Juan Adolfo, ordenada por el Tribunal en mayo de 2002 a instancias del administrador judicial provisional, apuntaba a que Serrano Cruz y Vilanova Serrano, con el dinero del incapaz, habían adquirido un seguro de vida de $7 millones a su nombre en el que ellas eran las únicas beneficiarias, habían hecho un contrato de anualidad variable por $4 millones en el que también eran ellas las beneficiarias, habían depositado casi $3 millones identificados como donación tipo *father's gift* en una cuenta a nombre de Vilanova Serrano y habían transferido los fondos de las cuentas privativas de don Juan Adolfo a cuentas conjuntas con Serrano Cruz.[29] Por ello, el Tribunal autorizó a la tutora Sonia Vilanova Hernández a ampliar la investigación a transacciones realizadas desde 1994, a contratar un contador para hacer una auditoría de los estados financieros de don Juan Adolfo, a contratar un perito calígrafo que analizara las firmas en contratos y cheques, y a contratar abogados para instar acciones judiciales con el fin de localizar y recuperar los bienes del incapaz.

El 26 de enero de 2006, don Juan Adolfo, representado por su tutora Sonia Vilanova Hernández y, a su vez, en

---

[29] Estas transacciones ocurrieron entre el 1997 y el 2002. Las más importantes se dieron entre el 6 de noviembre de 2000 y junio de 2001, estando pendiente el pleito de incapacidad. El juez de instancia señaló que la "incapacidad verdadera" de don Juan Adolfo había comenzado años antes de que se solicitara la declaración judicial de incapacidad, el 1 de noviembre de 2000.

representación de sus empresas, presentó una demanda de reivindicación de bienes contra Serrano Cruz, Vilanova Serrano y otros profesionales que contribuyeron para las transferencias de fondos. En la demanda, alegó que, según surgía de la investigación del administrador judicial, Serrano Cruz y Vilanova Serrano, con el consentimiento directo o tácito de los demás co-demandados, se habían estado apropiando sistemáticamente de los bienes personales de don Juan Adolfo, aprovechándose de que estaba incapacitado clínicamente desde el 1993. Estimó las pérdidas económicas causadas en $45 millones. Los demandados contestaron y Serrano Cruz reconvino.

El 23 de noviembre de 2007, don Juan Adolfo murió. El 3 de diciembre, se paralizaron los procedimientos. A raíz de su fallecimiento, surgieron las dos controversias que hoy debemos resolver.

## II

El 3 de diciembre de 2007, el Tribunal de Primera Instancia ordenó a la Sucesión de don Juan Adolfo realizar los trámites de sustitución de parte fallecida conforme a la Regla 22.1 de Procedimiento Civil. Dicha regla, en su parte pertinente, dispone que:

> Si una parte fallece y la reclamación no queda por ello extinguida, cualquiera de las partes en el procedimiento o sus abogados o abogadas notificarán el fallecimiento al tribunal y a las otras partes dentro del término de treinta (30) días, contados desde la fecha en que se conozca tal hecho. El tribunal, a solicitud hecha dentro de los noventa (90) días siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas. Los o

> las causahabientes o representantes podrán presentar la solicitud de sustitución del finado o de la finada, y dicha solicitud se notificará a las partes en la forma dispuesta en la Regla 67 de este apéndice. La demanda se enmendará a los únicos fines de conformar la sustitución e incorporar las nuevas partes del pleito. Transcurrido el término sin haberse solicitado la sustitución, se dictará sentencia desestimando el pleito, sin perjuicio.[30]

Los hermanos Vilanova Hernández y Vilanova Román pidieron sustituir a su padre en el pleito para la restitución de bienes, el 15 de enero de 2008. El 6 de febrero de 2008, Vilanova Serrano presentó una moción en la que se opuso a la sustitución solicitada por sus hermanos y pidió que don Juan Adolfo fuera sustituido por la Sucesión compuesta por los siete hermanos y la viuda, representada por ella como albacea. Argumentó que le correspondía a ella representar al causante como demandante, según el artículo 584 del Código de Enjuiciamiento Civil de 1933:

> Será deber de los administradores y, mientras éstos se nombren, de los albaceas representar al finado en todos los procedimientos comenzados por o contra el mismo antes de su muerte y los que se promovieran después por o contra el caudal de la herencia. Las acciones o procedimientos instruidos por o contra el finado se suspenderán a su muerte ínterin se haga cargo el albacea o se

---

[30] Regla 22.1(b) de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V R. 22.1(b). Bajo las Reglas de Procedimiento Civil de 1979, el término para solicitar la sustitución era de seis meses y el transcurso de éste no implicaba la desestimación sin perjuicio, sino el sobreseimiento en cuanto a la parte fallecida. Regla 22.1(a) de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 22.1(a). No obstante, para fines de la controversia ante este Tribunal, la aplicación de una u otra versión de la Regla no tiene el efecto de llevar a una resolución diferente.

nombre administrador y el albacea o administrador quedará subrogado como parte en la acción.[31]

El 21 de febrero, la jueza de instancia indicó que, "de entrada", no tenía reparos con sustituir al causante por todos los miembros de la Sucesión, como solicitó Vilanova Serrano, pero, para hacerlo, la albacea debía acreditarle que el Tribunal le había expedido las cartas testamentarias. Señaló que eso no eximiría a las co-demandadas de comparecer en ese carácter. No obstante, hizo constar que entendía que las circunstancias que motivaron el caso de reivindicación de bienes eran distintas a las que contempla el Código de Enjuiciamiento Civil cuando le encarga a la albacea representar los intereses del causante.[32]

El foro de instancia finalmente decidió que correspondía a la albacea testamentaria como tal, no en representación de la Sucesión, y a todos los herederos de don Juan Adolfo sustituirlo como parte demandante, pues en la sucesión testada se conoce la identidad de los herederos y éstos deben actuar conjuntamente con la albacea en todos los litigios a favor o en contra del caudal hereditario. Asimismo, resolvió que Vilanova Serrano y Serrano Cruz permanecerían como co-demandadas en su carácter individual;

---

[31] Art. 584, Código Enjuiciamiento Civil, 32 L.P.R.A. sec. 2471. En Mercado v. Mercado, 66 D.P.R. 811, 815 (1947), advertimos que los términos "administrador" y "albacea" suelen usarse indistintamente en estas disposiciones y en las españolas del mismo tema.

[32] Orden del Tribunal de Primera Instancia de San Juan, K AC 2006-0491, 21 de febrero de 2008.

su inclusión como demandantes era sólo para efectos procesales por ser herederas, porque sus intereses estaban en claro conflicto con los de los demás demandantes.[33]

El 6 de mayo de 2008, los hermanos Vilanova Hernández y Vilanova Román acudieron al Tribunal de Apelaciones. Alegaron que la determinación del foro de instancia perpetuaba el conflicto de intereses existente e imponía una limitación al litigio, pues tendrían que obtener la aprobación de Vilanova Serrano y Serrano Cruz para presentar alegaciones contra ellas.[34] También acudió al foro apelativo Vilanova Serrano, el 8 de mayo, para que se revocara la Resolución del Tribunal de Primera Instancia y se dispusiera que fuera ella la única que sustituyera al causante como demandante.[35]

El Tribunal de Apelaciones consolidó los recursos de certiorari y revocó la resolución del foro primario. Dispuso que, con el fin de salvaguardar los mejores intereses de todas las partes, debía nombrarse un administrador judicial especializado en el manejo de inversiones para que representara a don Juan Adolfo como demandante. Se basó en que, con la muerte del causante, todos los integrantes de su sucesión heredaron su causa de acción; en que la validez del testamento de don Juan Adolfo

---

[33] Resolución del Tribunal de Primera Instancia de San Juan, K AC 2006-0491, 3 de abril de 2008.

[34] Caso KLCE 2008-0619.

[35] Caso KLCE 2008-0631.

se está cuestionando judicialmente, y en que un tribunal puede nombrar administrador del caudal a un extraño cuando las circunstancias lo ameriten.[36]

A este Tribunal recurrieron Vilanova Serrano y Serrano Cruz para pedir que se revocara la Sentencia del foro apelativo y se ordenara que la albacea sustituyera al finado de forma exclusiva; en la alternativa, que se desestimara la demanda de reivindicación de bienes. La petición indica que el Tribunal de Apelaciones erró al no aplicar la disposición del Código de Enjuiciamiento Civil que establece que la albacea debe representar al causante en los procedimientos instados por él antes de su muerte y al sugerir que un extraño sustituyera al causante, removiendo *de facto* a la albacea sin una vista previa y adjudicando la validez del testamento a base de las alegaciones de la otra parte sobre la incapacidad del testador antes de que fuera declarada.[37]

Los hermanos Vilanova Hernández y Vilanova Román presentaron su alegato en oposición. Solicitaron que se denegara el certiorari de Vilanova Serrano y que se ordenara que sólo ellos sustituyeran al causante; en la alternativa, que se confirmara la Sentencia del Tribunal de Apelaciones y se nombrara un administrador judicial.

---

[36] Vilanova Díaz v. Vilanova Serrano, Sentencia del Tribunal de Apelaciones, KLCE 2008-0619, KLCE 2008-0631 y KLCE 2008-0636, 10 de octubre de 2008.

[37] Petición de Certiorari ante el Tribunal Supremo, CC-2009-303, 13 de abril de 2009.

Alegaron que sustituir al causante con la albacea impediría que algunos miembros de la Sucesión hagan valer sus derechos hereditarios, al dejar el caudal en manos de quienes no se esforzarían por reivindicar los bienes que forman parte de éste.[38]

III

Mientras se discutía quién debía sustituir a don Juan Adolfo en el pleito de reivindicación de bienes, Vilanova Serrano presentó una petición para que se expidieran cartas testamentarias a su nombre, el 29 de febrero de 2008.[39] Las cartas testamentarias son el documento judicial mediante el cual se autoriza a un albacea a ejercer sus funciones.[40] Las mismas se solicitan al aceptar expresamente el albaceazgo, según dispone el artículo 597 del Código de Enjuiciamiento Civil:

---

[38] Alegato en oposición ante el Tribunal Supremo, CC-2009-303, 27 de abril de 2009. Pidieron que fueran ellos los sustitutos del causante porque conllevaría menos gastos para el caudal, pero indicaron que, de no ser así, favorecían al administrador judicial como medida cautelar válida para proteger los derechos de las partes.

[39] La petición juramentada fue presentada ante el Tribunal de Primera Instancia de San Juan; caso KJV 2008-0528. Recordemos que el foro de instancia había condicionado la inclusión de todos los miembros de la Sucesión representados por la albacea, en sustitución del causante, a que Vilanova Serrano acreditara que se habían expedido las cartas testamentarias a su favor.

[40] *Véanse* I. Rivera García, <u>Diccionario de términos jurídicos</u>, 3ra ed., San Juan, LexisNexis, 2000, pág. 34; G. Velázquez, <u>Teoría del Derecho Sucesorio Puertorriqueño</u>, 2da ed., San Juan, Equity, 1968, pág. 259.

> Todo albacea que acepte el nombramiento hecho a su favor en un testamento deberá entregar al funcionario en cuya oficina se halla protocolado el testamento una aceptación del cargo por escrito, acompañada de un juramento, también por escrito, comprometiéndose a cumplir, del mejor modo que le fuera dable, sus obligaciones como albacea, sin lo cual no podrá hacerse cargo de los bienes del finado. La sala del Tribunal de Primera Instancia de la última residencia del finado o del lugar en que radican sus bienes, mediante la presentación de una certificación del notario u otro funcionario competente, en que conste haberse archivado dicha aceptación y juramento oficial, expedirá cartas testamentarias a favor del albacea, las cuales constituirán prueba de su autoridad. Tan pronto como un administrador haya prestado su fianza y juramento oficial, el juez o tribunal que lo hubiere nombrado expedirá a su favor cartas de administración bajo su sello, en testimonio de su autoridad.[41]

El 12 de marzo, los hermanos Vilanova Hernández y Vilanova Román solicitaron intervención en el caso *ex parte* de cartas testamentarias; se opusieron a la expedición de éstas, pidieron la descalificación de Vilanova Serrano y Serrano Cruz como albacea y albacea sustituta, y solicitaron que se nombrara un administrador judicial de los bienes del caudal, así como un contador partidor. El juez superior que atendió la petición ordenó a Vilanova Serrano mostrar causa por la cual no debía archivar la petición hasta tanto se dilucidaran en pleitos independientes todas las controversias sobre la validez del testamento. Vilanova Serrano argumentó que esa decisión se basaría en meras especulaciones y que procedía expedir las cartas testamentarias.

---

[41] 32 L.P.R.A. sec. 2571.

El 14 de agosto de 2008, el Tribunal de Primera Instancia decidió desestimar sin perjuicio la solicitud de cartas testamentarias hasta que se adjudicara la controversia sobre impugnación de testamento. Indicó que la petición *ex parte* era incompatible con el caso de impugnación de testamento que estaba pendiente ante el foro de instancia y con los remedios que habían solicitado los interventores en el caso de las cartas, los cuales también deberían ser atendidos en el otro pleito contencioso.[42]

Ese dictamen fue revocado por el Tribunal de Apelaciones, el 24 de abril de 2009, tras la apelación presentada por Vilanova Serrano el 1 de octubre de 2008. El foro apelativo concluyó que no procedía el archivo sin perjuicio de la petición de cartas testamentarias, pues, aunque la acción contenciosa de nulidad de testamento puede determinar la validez del nombramiento de la albacea, todavía no ha recaído una sentencia sobre la eficacia del testamento, que se presume válido mientras tanto. Por ello, ordenó al tribunal de instancia atender la petición de Vilanova Serrano de forma separada y expedir las cartas testamentarias si no existía causa para denegarlas, conforme a las exigencias del Código de Enjuiciamiento Civil.[43]

---

[42] Resolución del Tribunal de Primera Instancia de San Juan, K JV 2008-0528, 14 de agosto de 2008.

[43] Vilanova Serrano, Ex parte, Sentencia del Tribunal de Apelaciones, KLAN 0801-547, 24 de abril de 2009.

El 9 de julio de 2009, los hermanos Vilanova Hernández y Vilanova Román presentaron un recurso de certiorari ante este Tribunal para que revocáramos al foro apelativo y mantuviéramos en suspenso la expedición de cartas testamentarias. Alegaron que no se puede atender el asunto de las cartas testamentarias de forma independiente al caso de validez del testamento, pues Vilanova Serrano utilizaría la autorización de las cartas para poner en vigor el testamento impugnado y buscar sustituir al causante en el caso de reivindicación de bienes.[44] Por su parte, Vilanova Serrano presentó su oposición a la expedición del recurso, en la que argumentó que se estaba rebatiendo la presunción de capacidad del testador con meras alegaciones.[45] El 15 de enero de 2010, ordenamos la consolidación de los recursos por tratar ambos de la misma controversia y los dimos por sometidos.[46]

IV

El albaceazgo es una institución de la sucesión testamentaria mediante la cual el testador nombra a una persona *de confianza* para que se asegure de que se cumpla su voluntad después de su muerte, que se ejecuten las disposiciones de su testamento y se conserven sus bienes

---

[44] Petición de Certiorari ante el Tribunal Supremo, CC-2009-591, 9 de julio de 2009.

[45] Alegato en oposición ante el Tribunal Supremo, CC-2009-591, 21 de julio de 2009.

[46] Resolución del Tribunal Supremo, CC-2009-303 y CC-2009-591, 15 de enero de 2010.

hasta que se entreguen a quienes correspondan.[47] Vélez Torres señala que "es lógico pensar que la persona que estaría en mejores condiciones para realizar estas gestiones sería el heredero", pero puede suceder que éste no tenga la capacidad para administrar, "que surjan desavenencias entre los interesados sobre la mejor forma de administrar y cumplir con lo dispuesto por el causante, o que el heredero encargado de la administración sea guiado por la codicia".[48]

En la misma línea, Puig Ferriol comienza su tratado sobre el albaceazgo exponiendo que el problema principal de esta institución del derecho sucesorio se resume en una pregunta: "¿Es mejor que del exacto cumplimiento de las disposiciones del difunto se encargue el heredero o un tercero-albacea?".[49] En el presente caso, la interrogante se complica con la combinación de la heredera y la albacea en una misma persona. La pregunta entonces se convierte en: ¿Es apropiado que el exacto cumplimiento de las disposiciones del difunto quede a cargo de una heredera-albacea cuya idoneidad para el cargo se encuentra en disputa? La clave para contestar estas interrogantes la

---

[47] E. González Tejera, <u>Derecho de Sucesiones – Tomo 2: La sucesión testamentaria</u>, San Juan, Ed. UPR, 2002, págs. 535-537.

[48] J.R. Vélez Torres, <u>Curso de Derecho Civil – Derecho de Sucesiones</u>, 2da ed., San Juan, Revista Jurídica de la Universidad Interamericana, 1992, T. IV, Vol. III, pág. 337.

[49] L. Puig Ferriol, <u>El albaceazgo</u>, Barcelona, Ed. Bosch, 1967, pág. 11.

encontramos en el elemento de fiducia que caracteriza a la figura del albaceazgo.

No existe una incompatibilidad general entre sucesión y albaceazgo. Por eso, los herederos y legatarios pueden ser, a su vez, albaceas. Sin embargo, el desarrollo de esta figura demuestra que su mayor utilidad ha sido para atemperar los conflictos entre los llamados a heredar.[50] González Tejera afirma, incluso, que los albaceas serían innecesarios si "la condición humana no fuera como es" y todo causante pudiera confiar a plenitud en sus sucesores.[51] Así, el albaceazgo se estableció como un cargo fiduciario, voluntario, personalísimo y temporal para que la persona que testaba pudiera nombrar a una persona de confianza que hiciera cumplir su última voluntad, fuera su heredero o no.[52]

El Código Civil sólo requiere que la persona designada albacea sea mayor de edad y tenga capacidad para obligarse.[53] No obstante, como observa Albaladejo, hay personas que, aunque no presentan los impedimentos que la ley dispone como causas para excluirlos de entre los que

---

[50] González Tejera, Derecho de Sucesiones – Tomo 2, op. cit., págs. 536-539.

[51] Íd. a la pág. 537. Véase también J. Santos Briz y otros, Tratado de Derecho Civil – Teoría y práctica – Derecho de Sucesiones, Barcelona, Ed. Bosch, 2003, T. VI, pág. 381.

[52] M. Royo Martínez, Derecho Sucesorio, Sevilla, Ed. Edelce, 1951, pág. 315.

[53] Art. 815, Código Civil, 31 L.P.R.A. sec. 2512; Alejandro v. Tribunal Superior, 100 D.P.R. 600, 617 (1972).

tienen capacidad para ser albaceas, suscitan dudas en cuanto a la conveniencia de que sean los llamados a ejecutar ciertas disposiciones testamentarias.[54] El análisis para decidir si el albacea está capacitado para ejercer el cargo debe hacerse, pues, desde el punto de vista de su posibilidad de llevar a cabo las obligaciones que contrae y de las garantías que ofrece para el mejor cumplimiento de la misión encomendada.[55]

Según Miguel Royo, "en lo fundamental, el albaceazgo confiere atribuciones a la persona que lo ostenta para que, *fuera del ámbito de sus personales intereses*, haga valer eficazmente la voluntad respecto de un patrimonio ajeno y desarrolle una actividad normativa y decisoria frente a las personas que tienen intereses en la sucesión".[56] Esas atribuciones son las facultades que el testador le haya otorgado expresamente en su testamento y que no sean contrarias a las leyes.[57] Si el testador no las especifica, son las que el Código Civil determina: pagar los sufragios y el funeral; satisfacer los legados en metálico, con el conocimiento y beneplácito de los herederos; tomar precauciones para preservar y custodiar los bienes, con intervención de los herederos presentes; velar por la

---

[54] M. Albaladejo, El albaceazgo en el derecho español, Madrid, Ed. Tecnos, 1969, págs. 201-202.

[55] *Íd.* a la pág. 219.

[56] (Énfasis suplido.) Royo Martínez, *op. cit.*, pág. 315.

[57] Art. 823, Código Civil, 31 L.P.R.A. sec. 2520.

ejecución del testamento y, si es justo, defender su validez.[58] Además, tienen las facultades secundarias necesarias para ejercer las asignadas.[59] Al ejecutar dichas funciones, *la persona designada albacea tiene que ajustarse no sólo a las instrucciones del testamento, sino también al principio que regula su misión: la fiducia*.[60]

En *González Muñiz, Ex parte*, 128 D.P.R. 565, 571-573 (1991), discutimos esa naturaleza fiduciaria del albaceazgo y, a base de la confianza que requiere este encargo, establecimos que el albacea contrae una obligación de hacer y debe ejecutarla con la diligencia de un buen padre de familia. Por eso, responde por desidia, mala administración, dolo, apropiación indebida de los bienes, gastos innecesarios y litigios temerarios, entre otras razones. Asimismo, en *Alejandro v. Tribunal Superior*, 100 D.P.R. 600, 608-611 (1972), tras notar que el Código Civil menciona la remoción del albacea como una de las causas de

---

[58] Art. 824, Código Civil, 31 L.P.R.A. sec. 2521.

[59] Pino Development Corp. v. Registrador, 133 D.P.R. 373, 390 (1993).

[60] *Véase* J.L. Lacruz Berdejo, Derecho de Sucesiones, 2da ed., Barcelona, Ed. Bosch, 1976, Vol. I, pág. 498. Puig Ferriol menciona como ejemplo que la facultad de custodiar los bienes hereditarios está en consonancia con el carácter fiduciario del albaceazgo, pues permite que la persona de confianza vele por que los herederos no oculten los bienes en detrimento de otros herederos. Puig Ferriol, *op. cit.*, págs. 148-149. También indica que el poder de disponer de bienes hereditarios está predicado en la fiducia, porque el albacea debe asegurarse de que el producto de la venta pasará a manos de los herederos. *Íd.* a la pág. 205. *Véase también* L. Díez Picazo & A. Gullón, Sistema de Derecho Civil, 7ma ed., Madrid, Ed. Tecnos, 1997, Vol. IV, págs. 444-445.

terminación del albaceazgo pero no dispone cuáles son las razones para la remoción,[61] citamos las que ha establecido la jurisprudencia española, que incluyen la mala administración del caudal, la conducta dolosa en el desempeño del cargo y el uso malicioso de sus facultades en perjuicio de los llamados a la herencia.

Puig Ferriol explica que los tribunales españoles han estimado los actos dolosos en beneficio propio como causa suficiente para remover a una persona del cargo de albacea, pues es "totalmente incompatible una conducta dolosa con el desempeño de un cargo eminentemente fiduciario" y una de las características fundamentales del albaceazgo es la ejecución "en interés ajeno".[62] También identifica como causa de remoción el que el albacea, a sabiendas, no incluya todos los bienes del caudal al preparar su inventario, que es un deber importante del albaceazgo.[63]

Por otro lado, González Tejera señala que un albacea puede renunciar al cargo si no puede proseguir con la encomienda sin causarle serios detrimentos a sus intereses o a los de los herederos.[64] Estas motivaciones están ligadas

---

[61] Art. 832, Código Civil, 31 L.P.R.A. sec. 2529.

[62] Puig Ferriol, *op. cit.*, pág. 257. *Véase también* E. Bárcenas Simarro, Particiones hereditarias extrajudiciales, Madrid, 1978, T. I, pág. 72.

[63] Puig Ferriol, *op. cit.*, págs. 202-203. El deber de inventariar en Puerto Rico está regulado en los artículos 568-570 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 2401-2403.

[64] González Tejera, Derecho de Sucesiones – Tomo 2, *op. cit.*, págs. 549. También indica que, en muchas

a las condiciones que acompañan algunas de las facultades de los albaceas, relacionadas con la intervención o el consentimiento de los llamados a la herencia en las decisiones del albacea. Lo que Royo llama el "sistema de pesos y contrapesos" para la ejecución testamentaria provoca que, a falta de acuerdo entre el albacea y la mayoría de los herederos, éste tenga que desistir de tomar ciertas medidas.[65] El raciocinio detrás de esto es que, como el nombramiento de un albacea priva a los herederos o coherederos de sus facultades como sucesores,[66] el ejercicio del cargo no puede perjudicarlos.[67]

Todas estas disposiciones sobre el albaceazgo responden a que *el elemento crucial de esta institución es la fiducia*. Por lo tanto, al autorizar el ejercicio del cargo de albacea o al resolver controversias relacionadas con su nombramiento, debemos tener en cuenta la importancia de la confianza del testador en quien designa y de la disposición de esa persona para actuar en beneficio de los llamados a la herencia.

V

---

jurisdicciones angloamericanas, se considera que la persistencia de relaciones tensas con los herederos es justa causa para la renuncia. *Íd.* a la pág. 597 esc. 257.

[65] Royo, *op. cit.*, pág. 313; Lacruz Berdejo, *op. cit.*, pág. 497.

[66] Albaladejo, *op. cit.*, pág. 25.

[67] J.J. Gómez Ysabel, <u>Problemas fundamentales del ejercicio del albaceazgo</u>, Madrid, Ed. Reus, 1963, pág. 71.

La figura del albaceazgo siempre ha generado discusión y hasta decisiones contradictorias.[68] De hecho, el punto sobre el albaceazgo en el que coinciden los tratadistas españoles es en que la regulación de esta figura en la legislación es incompleta, existen demasiadas controversias doctrinales respecto a su ejercicio y los tribunales no han logrado armonizar las contradicciones que rodean el cargo de albacea.[69] La capacidad para instar acciones judiciales en concurrencia con los herederos es una de las áreas del albaceazgo que no está suficientemente regulada.[70]

La doctrina está dividida en cuanto a si la legitimación del albacea excluye la intervención de los herederos en los pleitos y viceversa. Albaladejo considera que la intervención conjunta sólo se da en casos de defensa del testamento o de la partición. En los demás casos, depende de si la sustitución del causante en esa acción le corresponde a los herederos o al albacea.[71] Mientras, Puig Ferriol expone que cualquier demanda impugnando el testamento o exigiendo derechos sobre los bienes hereditarios debe dirigirse al albacea mientras ejerce el

---

[68] *Véase* <u>Flecha v. Lebrón</u>, 166 D.P.R. 330, 345-368 (2005) (Sentencia; Opinión de conformidad del Juez Rebollo López); J. Puig Brutau, <u>Fundamentos de Derecho Civil</u>, 3ra ed., Barcelona, Ed. Bosch, 1990, T. V, Vol. I, págs. 398-400.

[69] *Véase* R. López Vilas, *Configuración jurídica del albacea en derecho español*, en <u>Estudios de Derecho Civil en honor del Prof. Castán Tobeñas</u>, Pamplona, Ed. Universidad de Navarra, 1969, Vol. VI, págs. 379-421.

[70] Puig Brutau, *op. cit.*, pág. 457.

[71] Albaladejo, *op. cit.*, págs. 373-374.

cargo, y el albacea participará en todos los litigios referentes a la constitución, ejercicio y terminación de su albaceazgo. Fuera de estos supuestos, los herederos serán los legitimados para actuar en juicios que afecten el caudal hereditario, porque se subrogan en la posición del causante. Añade Puig Ferriol que ello no impide que el albacea pueda intervenir en esos pleitos, ya que su participación puede ser útil para los herederos y legatarios.[72]

Puig Brutau señala que la legitimación del albacea para defender la validez del testamento en juicio, incluida entre las facultades del cargo en el artículo 824 de nuestro Código Civil, no implica que sólo el albacea puede representar al causante en pleitos en su nombre. Entiende que los herederos también están legitimados porque son partes interesadas y tienen derechos que proteger.[73] El mismo razonamiento aplica cuando se analiza el artículo 584 del Código de Enjuiciamiento Civil, que impone a los albaceas o administradores el deber de representar al finado en los procedimientos judiciales iniciados antes de su muerte o los relacionados con la herencia después de su fallecimiento. La disposición ordena al albacea a intervenir, pero no exige que sea con exclusión de los causahabientes. Con relación a esta idea, en *Paine v.*

---

[72] Puig Ferriol, *op. cit.*, págs. 226-227. Sobre los herederos como continuación de la personalidad del causante, *véase* <u>Torres Torres v. Torres Serrano</u>, 179 D.P.R. 481, 496-497 (2010).

[73] Puig Brutau, *op. cit.*, pág. 460.

*Secretario de Hacienda*, 85 D.P.R. 814, 820 (1962), este Tribunal indicó que los albaceas no forman una persona jurídica distinta de los herederos, pues "[e]l albaceazgo no es otra cosa que una administración acompañada de un derecho de representación para cumplir ciertas funciones específicas relacionadas con la conservación del caudal hereditario".

Como señala Puig Ferriol, la legitimación del albacea para hacer valer en juicio derechos y obligaciones relacionados con el testamento

> ha de configurarse como un supuesto de sustitución procesal, ya que el albacea es verdadera parte procesal porque defiende intereses que pertenecen a quien no puede hacerlos valer, pues el causante ya ha fallecido cuando entra en funciones el albacea y los destinatarios de los bienes hereditarios no adquieren ningún derecho de disposición sobre los mismos hasta tanto el albacea universal no les haya hecho entrega de los bienes o dinero de acuerdo con lo ordenado por el testador.[74]

De la misma forma, Albaladejo describe la sustitución procesal del causante por el albacea como una en que el segundo se convierte en parte sin ser titular de la relación litigiosa "de forma que obra en nombre propio, pero en interés ajeno (en el presente caso de los sucesores o favorecidos por el testamento)".[75]

En el caso ante nuestra consideración, Vilanova Serrano, de autorizársele ejercer el cargo de albacea,

---

[74] Puig Ferriol, *op. cit.*, págs. 223-224.

[75] (Paréntesis en el original). Albaladejo, *op. cit.*, pág. 371.

tendría que sustituir al causante en los litigios relacionados con los bienes del caudal, pero no por ello podría impedir la intervención de los herederos con interés en esos pleitos. Asimismo, la albacea tendría que actuar, tanto al representar al causante en procesos judiciales como al llevar a cabo las demás encomiendas del testador, con la responsabilidad fiduciaria que caracteriza el cargo.

VI

Las cartas testamentarias se expiden para acreditar la autoridad del albacea nombrado en testamento.[76] El Código de Enjuiciamiento Civil exige a toda persona que acepte el cargo de albacea comprometerse a cumplir con éste mediante un escrito juramentado, que es lo mismo que la petición de cartas testamentarias.[77] Sin embargo, el Código Civil considera aceptado el albaceazgo si la persona designada no se excusa dentro de seis días después de conocer de la muerte del testador o del nombramiento por testamento.[78] En *Andino v. Andino*, 83 D.P.R. 138, 140-141 (1961), armonizamos ambos estatutos al determinar que existen dos tipos de aceptación: la tácita, que se da con sólo no renunciar al cargo, y la expresa, que se utiliza cuando la extensión y complejidad del caudal obligan al albacea a obtener la legitimación del tribunal para ejercer sus

---

[76] García Ramis v. Serrallés, 171 D.P.R. 250, 251 (2007).

[77] Art. 597, Código Enjuiciamiento Civil, 32 L.P.R.A. sec. 2571.

[78] Art. 820, Código Civil, 31 L.P.R.A. sec. 2517.

poderes. Esto quiere decir que, de ordinario, no es necesario requerir la expedición de cartas testamentarias para reconocerle a un albacea sus facultades para actuar como tal. Una vez aceptado tácitamente el cargo, puede ejercer como albacea. Ahora bien, el recurso que nos ocupa no es un caso sencillo de aceptación del albaceazgo. La composición del caudal que dejó don Juan Adolfo, así como la situación conflictiva entre los miembros de la Familia Vilanova, dictan el requerimiento de cartas testamentarias y nos exigen expandir nuestro análisis sobre la procedencia del cargo.

En *Batiz v. Tribunal Superior*, 104 D.P.R. 41, 42-47 (1975), explicamos que a los procedimientos de jurisdicción voluntaria, como es el de cartas testamentarias, suelen comparecer varias partes en defensa de intereses opuestos, tornando el caso en uno contencioso en el que se debe adjudicar una controversia genuina. Aquí nos enfrentamos a un conflicto sobre la viabilidad de que Vilanova Serrano ejerza la posición de albacea, un cargo eminentemente fiduciario que no sería compatible con los actos que se alegan en su contra. Esa controversia no se puede despachar solamente con advertir que la centralidad del recurso es la petición de cartas y que las cuestiones sobre el testamento en virtud del cual se hace el nombramiento de la albacea se atenderán en otro pleito. Erró al hacerlo el Tribunal de Apelaciones y al concluir, además, que lo único que se había presentado eran alegaciones sobre la falta de

capacidad de Vilanova Serrano para fungir como albacea, lo cual no incidía en la decisión de autorizar las cartas.

En cuanto a este punto, la Opinión mayoritaria llega a una conclusión muy similar a la nuestra: debido a la naturaleza fiduciaria del cargo de albacea, en un proceso de expedición de cartas testamentarias en el que se presente oposición por cuestionarse la idoneidad de la persona nombrada albacea, deben considerarse factores como el grado de conflicto de intereses de la albacea y la desconfianza entre las partes. *Eso fue lo que consideró también el Tribunal de Primera Instancia en este caso al negarse a acreditar la autoridad de la albacea en el momento en que lo solicitó y dejar abierta la posibilidad de que la solicitud se volviera a presentar y a considerar en los méritos, al desestimar sin perjuicio.* Sin embargo, la Opinión mayoritaria confirma la determinación del Tribunal de Apelaciones de revocar la decisión del foro de instancia y ordenarle atender de forma separada la petición de cartas testamentarias.

Se debe dar espacio para que la sala que tiene ante sí la controversia pueda disponer sobre la validez del testamento y la solicitud de descalificación de la albacea. No se puede ignorar que ese pleito está pendiente y consentir que la albacea ejerza sus facultades, con la posible consecuencia de que lo haga sin autorización y en perjuicio de los derechos de las demás personas coherederas. Tomando en cuenta que ya se presentó prueba

sobre la idoneidad de la albacea en la sala donde se atendió la demanda sobre impugnación de testamento y descalificación de albacea -que se encuentra en etapa de apelación-, devolver el caso de cartas testamentarias al foro de instancia para que evalúe la misma prueba duplicaría y alargaría el proceso. Por entender que ello no abonaría a la economía procesal en un caso que se está litigando hace más de una década es que no apoyo la devolución de este caso al foro de instancia, como dispone la Opinión mayoritaria.

Por otro lado, la Opinión mayoritaria, al confirmar la Sentencia del Tribunal de Apelaciones en el caso sobre cartas testamentarias, hace la salvedad de que la petición se deberá examinar no sólo a tenor con los requisitos de competencia del Código de Enjuiciamiento Civil de Puerto Rico sino también utilizando tres factores relacionados con la idoneidad para ejercer el cargo fiduciario. Dichos factores no son más que una traducción al español de la doctrina discutida en un caso de un tribunal apelativo de Ohio *que interpreta una ley de ese estado*.[79]

---

[79] In re Estate of Young, 4 Ohio App 2d 315, 321 (1964); citado por el Tribunal Supremo de Ohio en In re Estate of Henne, 421 N.E.2d 506, 509 (1981). Los criterios que cita este caso del foro apelativo de Ohio fueron tomados de una sección de la compilación de jurisprudencia estatal American Law Reports. 18 A.L.R. 2nd 633 (1951), sustituida por 11 A.L.R. 4th 638 (1982, Sup. 2011). Sobre el problema que conlleva utilizar decisiones aisladas como fuentes de Derecho Comparado, *véase* H.C. Gutteridge, El Derecho Comparado: Introducción al método comparativo en la investigación y en el estudio del derecho, Barcelona, Ed. Instituto de Derecho Comparado, 1954, págs. 141-151.

El método empleado en la Opinión mayoritaria es totalmente inadecuado. No hay necesidad de recurrir al derecho estatutario y la jurisprudencia de dos jurisdicciones de Estados Unidos, Louisiana y Ohio, para determinar que hay un elemento fiduciario en nuestra institución de albaceazgo y establecer los criterios que deben guiar a nuestros tribunales al analizarlo.[80] El que nuestro Derecho de Sucesiones se haya visto influenciado por doctrinas estadounidenses, principalmente a través de las disposiciones del Código de Enjuiciamiento Civil, no justifica que se adopten como propias las legislaciones de otras jurisdicciones que no necesariamente comparten los principios de nuestro ordenamiento. No debemos perder de perspectiva que el *executor* angloamericano es diferente al albacea del Derecho Civil y que esa diferencia incide necesariamente en las reglas sustantivas y procesales que rigen ambas instituciones.[81]

Además, en Derecho Comparado, no es correcto recurrir a las soluciones adoptadas por los entes legislativos en otras jurisdicciones para interpretar las leyes nuestras.

---

[80] Vilanova v. Vilanova, Opinión mayoritaria, págs. 27-40. La Opinión mayoritaria llega a la misma conclusión que nosotros sobre el elemento de fiducia del albaceazgo, pero por un camino distinto y, a mi entender, innecesario. De hecho, las fuentes legislativas estatales que utiliza se refieren a la idoneidad del albacea, pero no definen dicho concepto. Por eso, la mayoría parece sentirse obligada a recurrir a la interpretación que le han dado los tribunales de esos estados en casos particulares aislados.

[81] *Véanse* González Tejera, Derecho de Sucesiones – Tomo 2, *op. cit.*, pág. 567; Flecha v. Lebrón, *supra*, a las págs. 374-375, 385-386, 390-391.

No puede convertirse en práctica acudir a los estatutos de unos estados, como se hace en la Opinión mayoritaria, sin explicar por qué se escogen esas disposiciones y no las de otros estados o las de otros países. *Recurrir a las interpretaciones sobre esas leyes, ya sean doctrinales o jurisprudenciales, podría ser de utilidad siempre y cuando se establezca previamente la similitud entre el texto foráneo interpretado y el propio. Esa semejanza debe incluir no sólo las palabras de aquella ley sino también su historial y propósito.*[82] Solamente si hay una verdadera analogía entre el producto legislativo de una jurisdicción distinta a la nuestra y la que nuestra legislatura adoptó se justifica buscar ilustración en las interpretaciones y aplicaciones del texto foráneo.[83] Cabe recalcar que este ejercicio se utiliza para ayudar en la interpretación de la legislación propia, nunca para acoger por jurisprudencia las disposiciones de otra jurisdicción.

Ciertamente, el artículo sobre expedición de cartas testamentarias de nuestro Código de Enjuiciamiento Civil no proviene de España. Pero, nuestra doctrina sobre el

---

[82] Para una descripción detallada del método general empleado en Derecho Comparado, que incluye la selección del asunto de la comparación, la descripción de las normas y sus contextos, y el análisis de similitudes y diferencias, *véase* G. Danneman, "Comparative Law: Study of Similarities or Differences?", en M. Reimann & R. Zimmermann (eds.), The Oxford Handbook of Comparative Law, Oxford, Oxford University Press, 2006, págs. 406-418.

[83] *Véase* R. David & J.E. Brierley, Major Legal Systems in the World Today: An Introduction to the Comparative Study of Law, London, Ed. Stevens & Sons, 1985, págs. 14-16.

albaceazgo y otros asuntos procesales relacionados con ese cargo han utilizado el ordenamiento español como modelo. Por ello, no se debe descartar el derecho español y estudiar esa disposición de Puerto Rico únicamente a la luz de las normas adoptadas en las jurisdicciones angloamericanas.[84] El estudio fragmentado de una disposición legal que es parte de un conjunto de leyes que regula toda un área de relaciones económicas e interpersonales siempre va a acarrear el riesgo de producir resultados inconsistentes.[85]

Ahora bien, al analizar nuestra doctrina de albaceazgo de origen español así como la figura parecida del *executor* en el derecho angloamericano, podemos concluir que los conflictos de interés que tenga el albacea afectan su desempeño; por eso deben considerarse *antes* de expedir las cartas testamentarias. Entonces, dado que el Código de

---

[84] Cuando este Tribunal ha tenido que enfrentarse a controversias sobre el tema del albaceazgo, la incompatibilidad de las disposiciones del Código Civil de origen español con las de origen angloamericano del Código de Enjuiciamiento Civil ha sido un problema recurrente. Por ejemplo, en Flecha v. Lebrón, *supra*, se discutió el alcance de las facultades del albacea, que eran más amplias en el Código de Enjuiciamiento Civil. Asimismo, en Mercado v. Mercado, *supra*, el conflicto surgió porque el Código Civil indica que el cargo de albacea es gratuito, mientras el de Enjuiciamiento Civil establece un esquema de compensación para los albaceas. Además, en Andino v. Andino, *supra*, el Tribunal armonizó la aceptación del cargo de albacea a través de cartas testamentarias dispuesta en el Código de Enjuiciamiento Civil con la aceptación tácita del cargo que establece el Código Civil.

[85] *Véanse* M.A. Glendon, M.W. Gordon & C. Osakwe, Comparative Legal Traditions, Minnesota, West Publishing, 1985, págs. 11-14; L.J. Constantinesco, Tratado de Derecho Comparado, Madrid, Ed. Tecnos, 1981, Vol. I, págs. 318-329.

Enjuiciamiento Civil permite que, una vez se expidan las cartas testamentarias, la albacea se haga cargo de los bienes del finado y ejerza sus funciones, me parece apropiada la decisión del foro de instancia de desestimar sin perjuicio la solicitud de las cartas hasta tanto se resuelva el pleito sobre la validez del testamento y la idoneidad de la albacea.

VII

La administración judicial se instituye para proteger a todos aquellos que puedan tener un interés legítimo en el caudal y se realiza "sin preferir unos intereses en detrimento de los demás".[86] Según Cuevas Segarra, la administración de la herencia cobra importancia en la práctica cuando se hace necesario manejar adecuadamente el caudal hereditario para proteger los intereses de los llamados a suceder antes de la partición.[87] El propósito de nombrar un administrador o una administradora judicial de los bienes del causante es conservarlos para que puedan distribuirse más tarde entre las personas con derecho a recibirlos.[88] La decisión de hacer dicho nombramiento depende de los hechos del caso y puede ser ordenada por el

---

[86] E. González Tejera, <u>Derecho de Sucesiones – Tomo 1: La sucesión intestada</u>, San Juan, Ed. UPR, 2001, pág. 252.

[87] J.A. Cuevas Segarra & A. Román García, <u>Derecho Sucesorio Comparado (Puerto Rico y España)</u>, San Juan, Publicaciones JTS, 2003, pág. 364.

[88] <u>Planellas v. Pastrana</u>, 63 D.P.R. 285, 290 (1944).

tribunal[89] o solicitada por el albacea testamentario, cualquier heredero o legatario o los acreedores del finado.[90]

El Código de Enjuiciamiento Civil, en su artículo 558, dispone que se tiene que nombrar un administrador o una administradora judicial cuando algunos de los herederos estén ausentes, sean menores o sean incapacitados y no tengan representantes.[91] Hemos señalado que esta sección especifica las circunstancias en las que es necesario el nombramiento, mas no excluye la administración judicial en cualquier otra instancia.[92] Por lo tanto, en una situación como la presente, en la cual se busca proteger el caudal en lo que se dilucida la validez del testamento, se puede decretar la administración judicial.[93]

Debemos mencionar que el artículo 557 del mismo Código establece que, si el testador veda expresamente la administración judicial sobre sus bienes y nombra albaceas o contadores partidores para que realicen la división, no se puede nombrar un administrador. La cláusula vigésimo

---

[89] Ab Intestato Balzac Vélez, 109 D.P.R. 670, 678 (1980).

[90] Art. 556, Código Enjuiciamiento Civil, 32 L.P.R.A. sec. 2361.

[91] 32 L.P.R.A. sec. 2363.

[92] Ab Intestato Balzac Vélez, supra, a las págs. 678-679; Ex parte Finlay, Waymouth & Lee y C. Armstrong e hijos, 42 D.P.R. 845, 851 (1931).

[93] La Opinión mayoritaria reconoce que, "en estricto derecho, se puede nombrar un administrador judicial para la Sucesión Vilanova Díaz". Vilanova v. Vilanova, Opinión mayoritaria, pág. 21.

primera del Testamento de don Juan Adolfo prohíbe "absolutamente toda intervención legal y judicial en su Testamentaría" y ordena que la administración del caudal relicto se practique extrajudicialmente en su totalidad.[94] Asimismo, en la decimosexta cláusula, se designa a Vilanova Serrano albacea y contadora partidora; o sea, se nombra a la albacea y se le encomienda la división de los bienes. Aunque no está ante nuestra consideración la validez de las disposiciones del Testamento, es menester señalar que el artículo 1010 del Código Civil dispone que la facultad de hacer la partición se le puede encomendar a cualquier persona que no sea uno de los coherederos, como lo es Vilanova Serrano.[95] Además, un testador no puede prohibir toda intervención judicial con su testamento.[96] Las cláusulas *in terrorem*, dirigidas a intimidar a los herederos para que no ataquen el testamento con fundamentos de nulidad, suelen tenerse por no puestas.[97] Ello implica que las disposiciones testamentarias que servirían como base para aplicar el artículo que imposibilita la administración judicial podrían declararse inválidas.

---

[94] Testamento de 1994, cláusula vigésimo primera.

[95] 31 L.P.R.A. sec. 2876.

[96] El Estado interviene por cuestiones de interés público. *Véase* González v. Tribunal Superior, 97 D.P.R. 804 (1969), en el que el Tribunal intervino para impedir el discrimen por razón de género entre los miembros de una sucesión.

[97] Art. 624, Código Civil, 31 L.P.R.A. sec. 2129; González Tejera, Derecho de Sucesiones – Tomo 2, *op. cit.*, págs. 334-336.

Más aun, debido a que, en este caso, la administración judicial se está utilizando precisamente para preservar los bienes del caudal mientras se determina la validez del testamento, renunciar a este mecanismo porque ese testamento lo rechaza significaría dejar de velar por los intereses de todos los llamados a la herencia. No podemos abstraernos de la realidad y ampararnos en presunciones de legitimidad para autorizar que se expidan cartas testamentarias y que se sustituya al causante por la albacea,[98] a sabiendas de que la validez del testamento se está dilucidando en un foro inferior y de que se ha estado llevando a cabo una investigación sobre los bienes del caudal por haberse imputado a Serrano Cruz y Vilanova Serrano el haberse transferido bienes cuantiosos del causante estando él incapaz. Nada impide tomar conocimiento judicial sobre casos relacionados con el recurso presentado ante este Tribunal, como lo han solicitado ambos grupos de peticionarios, para proveer los remedios más adecuados en protección de los derechos de todas las partes.

En *Ab Intestato Balzac Vélez*, 109 D.P.R. 670, 679 (1980), expresamos que la administración judicial es el mecanismo apropiado para atender escenarios en los que se hacen alegaciones sobre actos que ponen en peligro los

---

[98] En el caso de expedición de cartas testamentarias, el foro apelativo basó su decisión de autorizarlas en que el testamento se reputará válido mientras no se declare su invalidez, a pesar de reconocer que la decisión en torno a la validez del testamento afectaría el nombramiento de la albacea.

bienes del caudal. De manera similar, en *Martínez* et al. *v. Martínez*, 26 D.P.R. 157, 158-159 (1918), indicamos que es conveniente nombrar un administrador judicial en un caso en el que está en disputa si la posesión de ciertos bienes por un heredero conlleva la violación de los derechos de otros herederos.

Asimismo, en *Silva Oliveras v. Durán Rodríguez*, 119 D.P.R. 254, 261-264 (1987), un caso sobre dilapidación de bienes, resolvimos que, mientras se resolvía la controversia sobre la capacidad mental de la dueña de los bienes y la validez de un poder general otorgado por ella, la manera más efectiva de proteger el patrimonio era designando un administrador judicial. En ese caso, enunciamos que precisamente para ese tipo de situaciones es que existen estos remedios provisionales en nuestro ordenamiento procesal.[99] Además, en *Planellas v. Pastrana*, 63 D.P.R. 285, 290 (1944), decidimos que, ante el conflicto de intereses entre los sucesores que debía ser dirimido en un caso pendiente en el foro de instancia en el que se solicitaba que se decretara la nulidad de la declaratoria de herederos, procedía la administración judicial de los bienes involucrados en la controversia para conservarlos y entregarlos a quien finalmente demostrara su derecho a heredarlos en la acción plenaria.

---

[99] Silva Oliveras v. Durán Rodríguez, 119 D.P.R. 254, 264 (1987).

En el presente caso, están pendientes de resolución una acción de reivindicación de bienes del caudal que alegadamente se apropiaron unas herederas en detrimento de los demás herederos, así como un pleito independiente sobre la validez del testamento en el que esos bienes se distribuyen y en el que se encarga su manejo a una de las herederas. Las circunstancias son propicias para decretar la administración judicial.

Además, en marzo de 2008, los hermanos Vilanova Hernández y Vilanova Román solicitaron ante el Tribunal de Primera Instancia que se nombrara un administrador judicial para velar por los bienes del caudal. Incluyeron esa petición en su moción en oposición a la expedición de cartas testamentarias y solicitud de descalificación de albacea. La solicitud de administración judicial se fundamentó en los resultados de la investigación sobre la dilapidación de los bienes del causante por parte de Vilanova Serrano y Serrano Cruz, en el pleito pendiente de reivindicación de bienes y en el conflicto de intereses entre los dos grupos de herederos. Los peticionarios señalaron que la administración judicial procedía y resultaba necesaria e indicaron los trámites en los que podría intervenir el administrador, sin que su gestión se limitara a ellos. La solicitud cumplió con los cinco requisitos de contenido que establece el artículo 556 del Código de Enjuiciamiento Civil: 1) consignó el hecho de la muerte del causante; 2) explicó las circunstancias

relativas a su último testamento; 3) justificó el interés de los peticionarios en la administración y su derecho a solicitarla por ser herederos forzosos del finado; 4) enumeró los nombres y direcciones de todas las personas con derecho a la sucesión, y 5) mencionó que el causante dejó bienes sujetos a partición con expresión de cuantía.[100] La única exigencia con la que no cumplió fue que la petición estuviera juramentada. Sin embargo, en *Ab Intestato Balzac Vélez*, señalamos que "[c]omo foro de última instancia, hemos estado siempre alertas de no privar a un heredero de su derecho a pedir la administración judicial por sutilezas técnicas como la falta de juramento de una petición", por lo que ese detalle no es impedimento para concederla.[101]

Asimismo, en la solicitud de remedio de su alegato ante este Tribunal, en abril de 2009, los hermanos Vilanova Hernández y Vilanova Román pidieron nuevamente que se nombrara un administrador judicial, como medida cautelar válida para proteger los bienes del caudal y los derechos de todas las partes, en caso de que no se les permitiera ser los únicos sustitutos del causante como demandantes en el pleito de reivindicación de bienes.[102] Si las

---

[100] Solicitud de intervención; Oposición a expedición de cartas testamentarias; Descalificación de albacea, presentada en el Tribunal de Primera Instancia de San Juan, el 12 de marzo de 2008, Caso KJV 2008-0528. *Véase* Art. 556, Código Enjuiciamiento Civil, 32 L.P.R.A. sec. 2361.

[101] Ab Intestato Balzac Vélez, *supra*, a la pág. 678.

[102] La solicitud se presentó en el Tribunal de Primera Instancia dentro del caso KJV 2008-528, que es el número que le asignó ese foro al caso sobre cartas testamentarias,

circunstancias del caso lo ameritan y del expediente surge que los requisitos de la solicitud de administración judicial están presentes, el hecho de que los herederos no hayan seguido estrictamente el proceso establecido por el Código de Enjuiciamiento Civil para solicitarlo no veda el que este Tribunal pueda acceder a su petición.

De otro lado, la existencia de una albacea testamentaria no impide que se nombre un administrador judicial. En *Ab Intestato Marini Pabón*, 107 D.P.R. 433, 438-439 (1978), el Tribunal decidió que no procedía la administración, no por el mero hecho de que hubiera un albacea, sino porque ponderó las actuaciones de éste y concluyó que había desempeñado el cargo con la corrección y

---

que luego consideró el Tribunal de Apelaciones, bajo el número KLAN 0801-547, y que este Tribunal está atendiendo en la presente Opinión. A ese caso se le asignó el número CC-2009-591 en el Tribunal Supremo, y se consolidó con el caso CC-2009-303 sobre sustitución de parte, pues las partes eran las mismas y las controversias están íntimamente ligadas. Si la petición de administración judicial no se resolvió en el tribunal de instancia fue porque el caso en el que se presentó se desestimó en ese foro. Entonces, no se puede concluir que el interés de las partes en la administración judicial surgió luego de la Sentencia del tribunal apelativo y mucho menos que es un remedio que sugirió el Tribunal Supremo. Y, aun cuando fuera así, no sería impropio, pues los tribunales pueden conceder los remedios que procedan en derecho, según las alegaciones y la prueba, aunque las partes no los hayan solicitado. Reglas 42.4 y 71 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V R. 42.4 y R. 71. Las Reglas de Procedimiento Civil de 1979 disponían lo mismo. 32 L.P.R.A. Ap. III, R. 43.6 y R. 70. *Véase* J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Publicaciones JTS, 2000, Tomo II, págs. 704-707. Además, este Tribunal ha rechazado la idea de que una parte no puede variar su teoría del caso en su recurso apelativo. Sánchez v. Eastern Air Lines, Inc., 114 D.P.R. 691, 694-695 (1983). *Véase también* Valentín v. Housing Promoters, Inc., 146 D.P.R. 712, 719 (1998).

el cuidado que la ley exige.[103] A diferencia de aquel caso, en que se determinó que el albacea estaba cumpliendo con sus funciones "con toda normalidad",[104] en el recurso que estamos atendiendo es evidente la controversia en torno a la legitimidad de la albacea designada para ejercer ese cargo. Por eso, no se encuentra presente el fundamento por el cual la presencia de un albacea hace innecesaria la administración judicial. Todo lo contrario; considerada la historia de la Sucesión de don Juan Adolfo, es ineludible el auxilio de una persona neutral que vele por la conservación de los bienes, la corrección de los procesos y los intereses de todos los herederos y las herederas.

Por las mismas razones, es lógico que la persona que se designe como administradora tiene que ser "un extraño de reconocida honradez y capacidad", como ordena el artículo 564 del Código de Enjuiciamiento Civil para casos en que no se pueda nombrar al cónyuge sobreviviente o a la persona con mayor interés en la herencia por falta de capacidad para el cargo u objeciones a que lo desempeñen.[105] El

---

[103] Por otra parte, en Cabanillas v. Torrent, 32 D.P.R. 42 (1923), confirmamos el nombramiento de un administrador judicial para conservar los bienes en lo que se decidía si eran privativos del causante o gananciales, aun cuando en el testamento se había nombrado un albacea, quien no había aceptado el cargo. En ese caso, indicamos que la presencia de un contador partidor tampoco impide la administración judicial de los bienes. Véanse, también: Ab Intestato Balzac Vélez, supra, a la pág. 678; Pérez et al. v. Álvarez, 32 D.P.R. 157 (1923).

[104] Ab Intestato Marini Pabón, 107 D.P.R. 433, 437 (1978).

[105] 32 L.P.R.A. sec. 2369. En Ex parte Detrés, 67 D.P.R. 381, 384-385 (1947), señalamos que la preferencia que

nombramiento de la viuda Serrano Cruz o de la heredera Vilanova Serrano como administradoras derrotaría el propósito de zanjar el conflicto de intereses entre los miembros de la Sucesión a través de la administración judicial.

El administrador o la administradora tiene la función de "dirigir y proteger los intereses de la totalidad de la herencia".[106] La persona administradora debe tomar posesión inmediata de los bienes del finado, entregarlos a un depositario para su resguardo,[107] inventariarlos,[108] conservarlos y procurar que den las rentas o productos que correspondan.[109] Como parte de sus tareas, la persona en quien recaiga la administración judicial tendrá el deber de localizar y recuperar cualquier bien del caudal que no esté a su alcance, pero que tenga razones para pensar que existe.[110] Para ello, puede utilizar los procesos judiciales que estime razonables, incluyendo representar al finado en

---

establece el artículo 564 a favor del cónyuge viudo no es absoluta y puede nombrarse a otra persona si se determina que el viudo o la viuda no puede ejercer el cargo. En Ríos, ex parte y Martínez, opositora, 67 D.P.R. 418 (1947), no se le dio preferencia a la viuda porque no residía en Puerto Rico.

[106] Ab Intestato Balzac Vélez, supra, a la pág. 678.

[107] Art. 567, Código Enjuiciamiento Civil, 32 L.P.R.A. sec. 2372.

[108] Art. 568-570, Código Enjuiciamiento Civil, 32 L.P.R.A. secs. 2401-2403.

[109] Art. 571, Código Enjuiciamiento Civil, 32 L.P.R.A. sec. 2431.

[110] González Tejera, Derecho de Sucesiones – Tomo 1, op. cit., pág. 263.

los pleitos comenzados por él antes de su muerte.[111] Hemos manifestado que, cuando se sospecha que se ocultaron bienes o cuentas que pertenecen al caudal, procede ordenar al administrador judicial instituir procedimientos contra el heredero o la heredera que realizaba las transacciones del causante en sus últimos años de vida o contra quien procediere para que rinda cuentas.[112] Por lo tanto, en este caso hubiera sido conveniente nombrar un administrador judicial que sustituyera a don Juan Adolfo en el pleito de reivindicación de bienes con el fin de formar el caudal completo, en beneficio de todos los llamados a la herencia.

## VIII

El procedimiento de sustitución de parte, regulado por la Regla 22.1 de Procedimiento Civil, tiene el propósito de que, ante el fallecimiento de una parte que no suponga el fin del caso, la causa de acción pueda continuar a favor o en contra de las personas realmente interesadas en el pleito.[113] Este mecanismo procesal atiende "al interés

---

[111] Art. 584, Código Enjuiciamiento Civil, 32 L.P.R.A. sec. 2471. El administrador judicial, por la representación que le concede la ley, y los herederos, como partes realmente interesadas, deben actuar conjuntamente en todos los litigios que se promuevan a favor o en contra del caudal hereditario. Descartes v. Tribunal de Contribuciones, 74 D.P.R. 567, 574 (1953); Franceschi v. Corte, 45 D.P.R. 666, 676 (1933). Ante la situación conflictiva en este caso, esa actuación conjunta se daría a través de la representación de la Sucesión por el administrador, en lugar de la intervención directa de ambos en el litigio.

[112] Yumet v. Tribunal Superior, 80 D.P.R. 680, 698 (1958).

[113] Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664, 684 (1989).

público de que los asuntos en los tribunales se solucionan de forma expedita, evitando el perjuicio que la dilación pueda causar a las partes".[114]

No es discrecional de los tribunales conceder la sustitución, pero para ello se requiere la notificación de la muerte de la persona que ya está en el pleito y la solicitud de sustitución por sus causahabientes o representantes.[115] En este caso, los miembros de la Sucesión notificaron sobre la muerte de don Juan Adolfo y pidieron, a tiempo, sustituir al causante como parte demandante. No obstante, no fue posible autorizar la sustitución dados los conflictos entre los herederos y las herederas, y las solicitudes opuestas de incluir o excluir del pleito a ciertos sucesores. Esta situación ha prolongado el litigio y ha provocado su estancamiento.

Ante la inmovilización que representa esta controversia, un administrador o administradora judicial designada por el tribunal podría retomar el pleito instado por don Juan Adolfo, evitando mayores dilaciones. Debemos recordar que, cuando se realiza la sustitución, la causa de acción queda inalterada; lo único que cambia es el nombre de la parte y ésta ocupa el mismo lugar de quien sustituyó.[116] No sería efectivo sustituir al demandante solamente por Vilanova Serrano y Serrano Cruz, contra

---

[114] Cuevas Segarra, *op. cit.*, Tomo I, pág. 454.
[115] *Íd.*; 32 L.P.R.A. Ap. V R. 22.1(b).

[116] Lluch v. España Service Sta., 117 D.P.R. 729, 750 (1986); Carrasco v. Auffant, 77 D.P.R. 156, 160 (1954).

quienes pesan la mayor parte de las alegaciones de mal uso de los bienes en el caso. Tampoco sería conveniente excluirlas como sucesoras del causante, pues se podrían violar sus derechos como herederas.[117] La sustitución de don Juan Adolfo por el administrador o la administradora judicial no afectaría los derechos sustantivos de las partes.[118]

Entendemos que decretar la administración judicial, además de ser una determinación avalada por el ordenamiento legal, sería la más sensata. Tanto los hermanos Vilanova Hernández y Vilanova Román como las señoras Vilanova Serrano y Serrano Cruz nos expusieron en sus alegatos lo difícil, y hasta absurdo, que sería pretender que personas con intereses totalmente contrarios litiguen juntas como co-demandantes o que la albacea asuma dos personalidades antagónicas, teniendo que probar las alegaciones de la demanda contra sí misma. Coincidimos con la Opinión mayoritaria en que las demandadas no pueden ser también las demandantes de modo directo. Mas, ninguna opción en la que una o más de las partes en controversia tomen control del caso sería justa para velar por los intereses de todos y todas, ni eficaz para lograr determinar los derechos sobre

---

[117] Recordemos que los derechos sucesorios no se limitan al derecho a recibir bienes del caudal. *Véanse* Arts. 599-602, 31 L.P.R.A. secs. 2081-2084; Torres Torres v. Torres Serrano, 179 D.P.R. 481, 496-497 (2010); Feliciano Suárez, *Ex parte*, 117 D.P.R. 402, 412-414 (1986); González Tejera, Derecho de Sucesiones – Tomo 1, *op. cit.*, págs. 1-2.

[118] Pereira v. I.B.E.C., 95 D.P.R. 28, 66 (1967).

el caudal que corresponden a quienes acudieron a los tribunales. Y es que, como dijimos en *Jiménez v. Cruz*, 33 D.P.R. 228, 234 (1924), "de seguir como hasta ahora, se consumirán dichos bienes en gastos judiciales y continuarán siendo motivo de separación y encono en vez de fuente de bienestar". Los procesos judiciales tienen que servir para encontrar soluciones, no para acrecentar los conflictos entre las partes y alargar el camino hacia su conclusión. Con el nombramiento de un administrador o una administradora judicial, se encauzarían los procesos hacia una resolución más rápida y razonable, a la vez que se permitiría que todos los miembros de la Sucesión estuvieran igualmente representados como demandantes, en sustitución del causante.

Entiendo que el Tribunal de Apelaciones no erró al ordenar que un extraño sustituyera al causante, en representación de todos los herederos y las herederas. Su orden no entrañó una negación a aplicar el Código de Enjuiciamiento Civil, que, como vimos, no exige la sustitución exclusiva del causante por la albacea. Esas disposiciones no pueden aplicarse mecánicamente en casos que encierran conflictos entre la albacea y los interesados en el caudal, como el presente. Al ordenar la administración judicial, el foro apelativo tampoco determinó la validez del testamento ni removió *de facto* a la albacea de su cargo, pues esas controversias serán

adjudicadas en el pleito pendiente sobre nulidad de testamento.

IX

Por los fundamentos antes expuestos, confirmaría la Sentencia del Tribunal de Apelaciones en el caso CC-2009-303 y devolvería el caso al foro de instancia para la continuación de los procedimientos. Ordenaría que, en el epígrafe del caso sobre reivindicación de bienes, la parte demandante fuera sustituida por el administrador judicial designado, en representación de la Sucesión de Juan Adolfo Vilanova Díaz y en representación de la participación de Vilanova Díaz en las corporaciones en las que tenía intereses económicos.

En el caso CC-2009-591, revocaría al foro apelativo y desestimaría sin perjuicio la solicitud de expedición de cartas testamentarias a favor de Vilanova Serrano. Ésta se podría presentar nuevamente de determinarse por sentencia firme que el testamento mediante el cual se le nombró albacea es válido.

Como la Opinión mayoritaria resuelve lo contrario, disiento.


                              Liana Fiol Matta
                              Jueza Asociada